IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAURA SHENK,

    *Plaintiff*,

v.

    Civil Action No. ELH-20-443

HUMANE SOCIETY OF CARROLL
COUNTY, INC., *et al.*

    *Defendants*.

**MEMORANDUM OPINION**

Laura Shenk, the self-represented plaintiff, has filed suit against the Humane Society of Carroll County, Inc. ("HSCC"); Carroll County, Maryland (the "County"); Edward Smith, an animal control officer for HSCC; Charles Brown, the former Executive Director of HSCC; Karen Baker, the Executive Director of the HSCC; Gail Kessler, Deputy County Attorney; and Timothy Burke, County Attorney. ECF 1 (the "Complaint"); ECF 24 (the "Amended Complaint").[1] The Amended Complaint lodges a staggering number of counts under federal and State law. The claims are rooted in the seizure of plaintiff's eleven dogs and other property in February and March of 2017 and the filing of criminal charges against Shenk that were subsequently dismissed. *See* ECF 24. In addition to compensatory and punitive damages, plaintiff includes a request for relief entitled "Injunctive(?)," in which she states that if it is possible for her dogs to be returned, she would "very much like for that to happen." ECF 24 at 60.

Defendants moved to dismiss or, in the alternative, for summary judgment as to the original Complaint. ECF 13. Plaintiff subsequently moved to amend her Complaint. ECF 21.

---

[1] The original Complaint did not name Burke as a defendant. Carroll County is identified in the Amended Complaint as "Carroll County, MD Government." *See* ECF 24 at 2. Brown is identified as "Director, Oregon Coast Humane Society." But, he has been sued for alleged conduct that took place when he was employed by HSCC. *See id*.

By Order of April 15, 2021 (ECF 23), I granted plaintiff leave to amend, with comments as to the requirements for a viable complaint. For example, the Court noted that, under Fed. R. Civ. P. 8(d)(1), each allegation in a complaint should be "simple, concise, and direct." ECF 23 at 2 (quoting Fed. R. Civ. P. 8(d)(1)). Furthermore, the Court stated that, under Fed. R. Civ. P. 8(a), a pleading must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" ECF 23 at 2 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)).

Plaintiff subsequently filed an Amended Complaint, containing 65 counts. ECF 24. The Amended Complaint also includes several exhibits. ECF 24-1. As defendants note, many of the claims are duplicative. *See* ECF 29-2 at 2 n.1; *id.* at 3 n.2.

Defendants have moved to dismiss or, alternatively, for summary judgment. ECF 29. The motion is supported by a memorandum (ECF 29-2) (collectively, the "Motion") and several exhibits. ECF 29-4 to ECF 29-12. Plaintiff opposes the Motion (ECF 32, the "Opposition"), supported by several exhibits. ECF 32-1. And, defendants have replied. ECF 34 (the "Reply").[2]

For the reasons that follow, I shall grant the Motion in part and deny it in part.

### I. Overview of the Complaint

The Amended Complaint consists of 53 handwritten pages attached to the Court's general civil complaint form. As noted, it contains 65 counts, lodged under both federal and Maryland

---

[2] Defendants' reply was due in early August 2021. However, defendants did not file their Reply until November 24, 2021. ECF 24. The Reply was accompanied by a motion for an extension of time, *nunc pro tunc*. ECF 33. Defense counsel attributed the lengthy delay to personal error. *Id.* The Court granted the motion, subject to plaintiff's right to move to rescind the Order as improvidently granted. ECF 35. Plaintiff did not do so by the date provided.

law.  With the exception of counts 5, 30, and 40, all counts against the individual defendants are brought "personally and professionally."[3]

Each count generally consists of a caption followed by between one sentence and several paragraphs of factual allegations.  Although the body of a count will occasionally make reference to a constitutional provision or some legal terminology, in general the only reference to the legal theory supporting any particular claim is the caption itself.  The captions include, among others: "Illegal Search and Seizure" (counts 1, 3, 4, and 14); "Destruction of Property" (counts 10, 15, 16, and 57); "Harassment" (counts 17, 19, 21, 23, 31, 32, 33, and 49); "Nonfeasance" (counts 50, 52, 53, 54, and 55); "Misfeasance" (counts 51 and 58); "Malfeasance" (counts 59, 60, and 61); "Bad Faith" (counts 2, 18, 20, 22, and 24); "Defamation" (counts 7, 46, and 47); and "Fraudulent Misrepresentation" (counts 25, 26, 27, 28, 29, 30, 34, 35, 36, 37, and 38).  Some counts simply refer to other counts, but for a different defendant, and sometimes with a different caption.  For example, Count 17 lodges a claim of "harassment" against HSCC.  ECF 24 at 22-23.  Counts 18 through 24 contain claims of harassment and bad faith about other defendants merely by reference to Count 17.  *Id*. at 24-25.

Because the Amended Complaint contains no overall narrative, but simply factual allegations for each count, it is difficult to draw a coherent picture of the case from the Amended Complaint  Nevertheless, I shall attempt to summarize the facts on the basis of what I glean from the Amended Complaint and documents that I may consider at the Rule 12(b)(6) stage.[4]

---

[3] Defendants suggest that the "professional claims" are actually official capacity claims. ECF 29-2 at 2 n.1.

[4] In regard to a motion to dismiss, the court must assume the truth of plaintiff's allegations. *See*, *e.g.*, *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 608-09 (4th Cir. 2020).  But, I may "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing*, LLC, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. App'x. 200 (4th Cir. 2016); *see*

In February 2017, plaintiff was a resident of New Windsor, Maryland.  ECF 24 at 9.  HSCC is alleged to be the "Appointed Local 'Animal Control Authority'" for Carroll County.  *Id*. at 1.[5] As mentioned, Baker is alleged to be the current director of HSCC; Brown is the former director of HSCC; and Smith is an animal control officer for HSCC.  ECF 24 at 1, 2, 8, 10; ECF 1 at 9, 10. Burke is the "County Attorney" for Carroll County, and Kessler is the "Deputy County Attorney." ECF 24 at 8, 22.

I pause to note that "[s]ince 1900, Maryland law has authorized members of humane societies to serve as animal control units and to help carry out the State's laws concerning the protection of animals from abuse or neglect."  *Rohrer v. Humane Society of Wash. Cty.*, 454 Md. 1, 9, 163 A.3d 146, 150-51 (2017).  For example, "the criminal statutes concerning animal cruelty delegate to humane societies certain powers to carry out the State's policy against animal cruelty." *Id*.  The Carroll County Code provides that the County Commissioners shall designate an "organization, agency, or corporation" to supervise the Code's provisions regulating animals and to operate the County's animal shelter. County Code § 90.01.  Pursuant to this provision, the County Commissioners have designated HSCC.  *See* ECF 29-12 (Memorandum of Understanding).[6]

In February and March 2017, Smith executed search and seizure warrants at plaintiff's house, seizing three of plaintiff's dogs on February 21, 2017, and plaintiff's eight remaining dogs

---

*also* Fed. R. Evid. 201(b)(2); *Schultz v. Braga*, 290 F. Supp. 2d 637, 651 n. 8 (D. Md. 2003) (taking judicial notice of dockets in state proceedings).

[5] The Complaint alleged that, as the local animal control authority, HSCC could issue fines for violations of the County code, issue licenses, and house impounded animals. ECF 1 at 9.

[6] Defendants assert, without specific citation to legal authority, that "Carroll County Zoning laws require that any person owning/harboring more than three dogs must have a kennel license."  ECF 29-2 at 7; ECF 29-4 (Aff. of Edward Smith), ¶ 5.

4

on March 3, 2017, as well as other property.  ECF 24 at 9-13; *see also* ECF 32-1 at 34-43 (Smith's applications for the warrants, and the approved warrants).  The warrants stemmed from Smith's purported concerns as to plaintiff's care and treatment of her animals, and followed what was apparently an acrimonious relationship between plaintiff, HSCC, and Smith.  ECF 1 at 11; ECF 24-1 (Letter from Carroll County State's Attorney Brian DeLeonardo to Brown) at 2; ECF 32-1 at 29-30, 39.[7]

After these seizures, Smith filed an application for a statement of charges against plaintiff. Shenk was charged with 24 criminal violations, principally animal cruelty.  ECF 24 at 16; ECF 29-4 at 11-14 (Smith's application for a statement of charges); ECF 29-6 (public docket for State criminal case against plaintiff).  However, on May 23, 2017, the charges were *nol prossed* by the Carroll County State's Attorney's Office.  ECF 24 at 16; ECF 29-6.  The letter from State's Attorney DeLeonardo to Brown, which is attached to the Amended Complaint, explained that this was because of difficulties related to Smith's involvement in the case, including his adversarial relationship with plaintiff; his failure to follow policy that required a co-affiant from the Sheriff's Office on the second warrant application; and statements Smith made to the press and on social media following his application for charges.  ECF 24-1 at 1-5.

In March 2017, plaintiff, then represented by counsel, filed a replevin action to recover her dogs and other property.  ECF 1 at 12; ECF 24 at 18; ECF 29-7 (docket for replevin action in District Court for Carroll County); ECF 29-8 (docket for replevin action in Circuit Court for Carroll County).  Her petition was denied by the District Court for Carroll County and then, on

---

[7] According to defendants, the investigation was prompted by an unsolicited call by a veterinarian to Smith on February 12, 2017.  The veterinarian, Lori Brewer, DVM, reported serious concerns of abuse and/or neglect of a cat that belonged to plaintiff.  ECF 29-2 at 6-7.  As a result, Smith went to plaintiff's home and observed worrisome conditions involving numerous animals. *Id.* at 7.

appeal, by Judge J. Barry Hughes of the Circuit Court for Carroll County in a written opinion issued May 16, 2019. *See* ECF 29-9 (circuit court opinion). In his 23-page ruling, Judge Hughes found that both warrants were supported by probable cause and were properly executed. ECF 29-9 at 3-15, 23. In addition, he ruled that even after the dismissal of the criminal charges against plaintiff, the dogs were lawfully held by HSCC under the provisions of Md. Code (2021 Repl. Vol.), § 10-615 of the Criminal Law Article ("C.L."). *Id*. at 15-24. That statute "authorizes an officer of a humane society to take possession of an animal from its owner 'if necessary to protect the animal from cruelty' or 'if necessary for the health of the animal.'" *Rohrer*, 454 Md. at 5, 163 A.3d at 148 (quoting C.L. § 10-615).

After the dogs were seized in February and March 2017, and throughout plaintiff's replevin proceedings, HSCC continued to hold plaintiff's dogs. ECF 24 at 10-12, 17-18, 35-38. Negotiations to return plaintiff's animals to her were unsuccessful. *Id*. at 11-12, 17-18. Plaintiff alleges that, during this time, four of her dogs were euthanized: "Missy" in August 2017 (*id*. at 18-19); "Tisha" and "Smiley" in the "fall of 2017" (*id*. at 21); and "Sassy" at an unspecified time. *Id*. at 48-51.

In August 2019, plaintiff filed a second replevin action. ECF 21 at 32; ECF 29-10 (public docket). She alleges that her suit was combined with two lawsuits filed against her in May 2019 by HSCC to recover the cost of caring for her dogs. ECF 24 at 31-32. The District Court for Carroll County ordered the return of plaintiff's dogs, conditioned on plaintiff's payment of $29,921.13 in costs incurred by HSCC. ECF 29-11 (circuit court opinion of September 17, 2020, in second replevin case, describing the procedural history) at 1-2. However, HSCC allegedly gave away plaintiff's dogs to "other organizations," without notice to plaintiff. ECF 24 at 33, 34. The District Court for Carroll County found that HSCC had done so without providing plaintiff with

72-hour notice, as required by C.L. § 10-617.  ECF 29-11 at 4-5.[8]  Because the dogs were no longer in the custody of HSCC, the State district court struck plaintiff's obligation to reimburse HSCC for the costs.  *Id*.  The ruling was upheld by Judge Fred S. Hecker of the Circuit Court for Carroll County in an opinion of September 17, 2020.  *Id*. at 5-9.

As noted, HSCC seized a total of eleven dogs from plaintiff.  None were returned to her. This suit followed.

## II. Legal Standards

### A.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Nadendla v. Wake Meal*, ___ F.4th ___, 2022 WL 187835, at *3 (4th Cir. Jan. 21, 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

The court determines whether a complaint states a claim for relief by reference to the pleading requirements of Fed. R. Civ. P. 8.  Rule 8 of the Federal Rules of Civil Procedure sets forth the "baseline standard to which all complaints must adhere."  *Plumhoff v. Cent. Mortg. Co.*,

---

[8] The District Court rejected HSCC's argument that notice was provided by the court's ruling. *See* ECF 29-11 at 4-5.

286 F. Supp. 3d 699, 701 (D. Md. 2017).  Under Rule 8(a), a complaint must "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]'"  Fed. R. Civ. P. 8(a)(2).  The rule also requires that "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P 8(d)(1).  The goal of Rule 8 is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957), *overruled on other grounds by Twombly*, 550 U.S. 54; 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1202 (3d ed. Apr. 2021) ("Wright & Miller") (describing the objectives of Rule 8).

Whether a complaint satisfies Rule 8 turns on "various factors, including the length and complexity of the complaint; whether the complaint was clear enough to enable the defendant to know how to defend himself; and whether the plaintiff was represented by counsel." *Sewarz v. Long*, 407 Fed. App'x 718, 719 (4th Cir. 2011) (internal citations omitted).  Notably, a complaint does not run afoul of Rule 8 merely because it is bloated with redundant allegations.  *See id.* (finding district court erred in dismissing 33-page complaint where the allegations were "intelligible and clearly delineated"); *see also United States ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Surplusage can and should be ignored.").  Nor does the occasional lapse in clarity doom a complaint.

However, to survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 2022 WL 187835, at *3; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule

8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the

9

factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

A plaintiff may not cure a defect in a complaint, or otherwise amend a complaint, by way of her opposition briefing. *See, e.g.*, *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *Glenn v. Wells Fargo Bank, N.A.*, DKC-3058, 2016 WL 3570274 at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not alleged in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot,

through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993).

**B.**

The Motion seeks summary judgment as to the claims in counts 1, 3, 4, 6, and 8.  ECF 29-2 at 32-38.[9]  Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Market Development Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law.").  The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, it must support its factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials...."  But, where

---

[9] Defendants moved for summary judgment as to count 9 (*see* ECF 29-2 at 37-38), but they also moved to dismiss count 9. *See id*. at 29-31.

the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, as just discussed, or "the burden on the moving party may [also] be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp*., 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

"Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact." *Brother Convenience Store, Inc. v. U.S. Dep't of Agriculture*, GLR-20-1346, 2021 WL 3911594, at *8 (D. Md. Sept. 1, 2021) (citing *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586-87). Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (May 17, 2004); *see also Celotex*, 477 U.S. at 322-24. As indicated, the court must view all of the facts, including any reasonable inferences to be drawn, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd*., 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

However, summary judgment ordinarily is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). As the Fourth Circuit has said, a summary judgment motion prior to discovery "forces the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014)); *accord*

*Putney v. Likin*, 656 Fed. App'x 632, 639 (4th Cir. 2016) (per curiam).  And, in this context, the court should approach a summary judgment motion "with great caution and attention to the parties' procedural rights."  Wright & Miller § 1366.

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d).  However, the Fourth Circuit has "not always insisted" on a Rule 56(d) affidavit.  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (internal citations omitted).  Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id*. at 244-45 (internal citations omitted).  In addition, the Fourth Circuit has said that courts should not insist on technical compliance with Rule 56(d) "where, as here, the non-moving party is proceeding pro se."  *Putney*, 656 Fed. App'x at 638; *cf. Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978) ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his cause of action.").

Plaintiff has not filed a Rule 56(d) affidavit.  But, she plainly disputes numerous facts asserted in the Motion.  *See* ECF 32 at 2.

## C.

Plaintiff is self-represented. Thus, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "However, liberal construction does not absolve Plaintiff from pleading a plausible claim."  *Bey*

*v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 Fed. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 Fed. App'x 255 (4th Cir. 2013).

Notably, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the Court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 Fed. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint). As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278.

In short, "the leeway extended to a *pro se* plaintiff must be tempered to require the plaintiff to comply with the Federal Rules of Civil Procedure, including the pleading requirements of Rule 8." *Adam v. Wells Fargo Bank, N.A.*, JFM-09-3287, 2010 WL 3001160, at *3 (D. Md. July 28, 2010). The Court "'cannot construct the plaintiff's legal arguments for [her].'" *Jackson v. Warning*, PJM-15-1233, 2016 WL 7228866, at *5 (D. Md. Dec. 13, 2016) (internal citations omitted).

14

I am also mindful that plaintiff has been granted leave to proceed in forma pauperis ("IFP"). ECF 3.   Plaintiff's IFP status obligates the Court to conduct a review of the allegations in the Complaint to determine whether the suit has a factual and legal basis.  *See* 28 U.S.C. § 1915(e)(2)(B).  And, the Court "shall dismiss the case at any time" if it determines that the action "is frivolous or malicious"; "fails to state a claim on which relief may be granted"; or "seeks monetary relief against a defendant who is immune from such relief." *Id.*

Of relevance here, the Federal Rules of Civil Procedure do not countenance what is known as "shotgun pleading."  *See Lampkin-Asam v. Volusia Cty. Sch. Bd.*, 261 Fed. App'x. 274, 277 (11th Cir. 2008).  A complaint that "'fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief' constitutes a 'shotgun pleading.'"  *Jackson*, 2016 WL 7228866, at *4 (quoting *SunTrust Mortgage, Inc. v. First Residential Mortgage Servs. Corp.*, No. 3:12CV162, 2012 WL 7062086, at *7 (E.D. Va. Sept. 11, 2012), *report and recommendation adopted*, No. 3:12CV162, 2013 WL 505828 (E.D. Va. Feb. 8, 2013)) (alteration in *Jackson*).

"[P]leadings of this sort fail to apprise the opposing party of the particular claims against it (and the potential extent of its liability); they also water down the rights of parties to have valid claims litigated efficiently and waste scarce judicial resources."  *Jackson*, 2016 WL 7228866, at *4 (cleaned up); *see also, e.g.*, *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008) (cataloging the negative consequences of shotgun pleading), *abrogated on other grounds by Twombly*, 550 U.S. 544.  The Eleventh Circuit has said: "[A] district court that receives a shotgun pleading should strike it and instruct counsel to replead the case—even if the

other party does not move the court to strike the pleading." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020).

"Lengthy pleadings offering confusing factual narratives and conclusory statements of law place an unjustified burden on the court and any party who must respond. . . . A court therefore may, in its discretion, dismiss a complaint if it is 'so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.'" *Howes v. SN Servicing Corp.*, CCB-20-670, 2021 WL 878354, at *2 (D. Md. Mar. 9, 2021) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see also McCrea v. Wells Fargo*, RDB-18-2490, 2019 WL 2513770, at *7 (D. Md. June 17, 2019) ("Pro se Complaints marred by 'shotgun pleading,' which renders impossible any attempt to decipher 'which allegations of fact are intended to support which claims for relief' warrant dismissal.") (internal citation omitted).

### III. Discussion

#### A.  Fed. R. Civ. P. 8

The Amended Complaint fails to comply with the requirements of Fed. R.  Civ. P. 8.  As an initial matter, it is the exceedingly rare case that will truly require 65 different counts.  Indeed, the sheer number of counts lodged by plaintiff borders on vexatious.  Within the 65 counts, plaintiff may well have viable claims.  But, it is difficult to see the forest through the trees.

The factual allegations in support of each cause of action are generally unclear.  For many counts, plaintiff simply seems to have alleged certain facts and then prefaced these facts with a caption that sounds like a claim, such as "malfeasance" or "bad faith," without any explanation of what is meant by this caption, what legal theory is actually being asserted, or how the facts in question support it. *See, e.g.*, ECF 24 at 10-12, 19-20, 22-25, 30-31, 34, 41-47, 51-53 (counts 2,

16

11, 12, 17-24, 31-33, 39, 49-55, and 58-61, alleging "bad faith," "negligence," "harassment,"
"illegal civil forfeiture," "misfeasance," "malfeasance," and "nonfeasance").

The Amended Complaint falls woefully short of Rule 8's requirement that a complaint be
"simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), and that it "give the defendant fair notice of
what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.
In general, the Amended Complaint "'fails to articulate claims with sufficient clarity to allow the
defendant to frame a responsive pleading.'" *Jackson*, 2016 WL 7228866, at *4 (quoting *SunTrust
Mortgage, Inc.*, 2012 WL 7062086, at *7). To survive a motion to dismiss under Rule 12(b)(6),
the suit must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And,
plaintiff's self-represented status "does not absolve Plaintiff from pleading a plausible claim," *Bey*,
997 F. Supp. 2d at 314, nor does it excuse plaintiff from her obligation to "comply with the Federal
Rules of Civil Procedure, including the pleading requirements of Rule 8." *Adam*, 2010 WL
3001160, at *3.

Plaintiff's Opposition underscores the Court's concerns. There, she repeatedly attempts to
amend her claims, either by adding factual allegations or refashioning the claims. *See, e.g.*, ECF
31 at 1-2, 5-11. For example, defendants argue in the Motion that, as to the County or HSCC,
counts 9, 48, 62, 63, 64, and 65 fall short of the requirements in *Monell v. Dep't of Social Services
of City of New York*, 436 U.S. 658 (1978). ECF 29-2 at 29-31. In her Opposition, plaintiff states
that, upon reading the assertion, she "researched what a Monell claim is," and realized that this is
what she was attempting to assert with her various claims for misfeasance, malfeasance, and
nonfeasance. ECF 32 at 10. But, most of these counts contain no inkling that this is what plaintiff
might have been attempting to assert, nor the factual allegations to support such claims. *See* ECF
24 at 42-47, 51-53. Of course, plaintiff may not cure a defect in the Amended Complaint by way

of her Opposition.  *See, e.g.*, *So. Walk at Broadlands Homeowner's Ass'n, Inc.*, 713 F.3d at 184.

And, the Amended Complaint fails to give defendants fair notice of the claims plaintiff lodges.

In her Opposition, plaintiff states that she is "not sure" of the meaning of "failed to 'state a claim.'"  ECF 32 at 6.  She asserts that she has stated "the reality of what occurred," and that if she "has not [stated a claim] properly," or "used the wrong words," this "only reflects [her] lack of knowledge."  *Id*.  And, she is "happy to try to correct these errors," "[i]f the court would like to give her instruction."  *Id*.  But, the Court may not serve as an advocate, so as to identify plaintiff's potential causes of action for her.  *See, e.g.*, *Brock*, 107 F.3d at 242-43; *Weller*, 901 F.2d at 391; *Baudett*, 775 F.2d at 1278.

Nevertheless, in view of plaintiff's pro se status, and in the interests of the efficient management of the case, I will permit plaintiff's case to move forward for a handful of counts that she has adequately asserted.  These are counts 1, 3, 4, 6, and 8, for which defendants have moved for summary judgment, rather than to dismiss under Rule 12(b)(6).  As discussed below, I will dismiss the remaining counts.  And, where appropriate, I will afford plaintiff another opportunity to amend, so as to comply with the requirements of Fed. R. Civ. P. 8.

Plaintiff is reminded that each claim must include the pertinent facts to support it or otherwise incorporate them.  Where plaintiff pleads the same claim based on the same facts against more than one defendant, all defendants may be named in the same count, so long as there are adequate factual allegations to do so.  And, each count must include factual allegations that support the elements of each claim.

### B. Local Government Tort Claims Act

Defendants argue that all of plaintiff's State law claims must be dismissed for failure to plead notice under the Local Government Tort Claims Act ("LGTCA"), Md. Code (2020 Repl.

Vol., 2021 Supp.), §§ 5-301 *et seq.* of the Courts and Judicial Proceedings Article ("C.J."). ECF 29-2 at 18-19. In her Opposition, plaintiff acknowledges that she did not plead notice in her Amended Complaint and "ask[s] the courts [sic] forgiveness." ECF 32 at 1. However, she asserts that she did properly notify defendants, and has attached copies of the purported notifications, along with Postal Service certified mail receipts. *See* ECF 32-1 at 1-15. These materials suggest that plaintiff attempted to provide the required notice.

The LGTCA is contained in Title 5, Subtitle 3 of the Courts and Judicial Proceedings Article of the Maryland Code. It provides, *inter alia*, that "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." C.J. § 5-303(b)(1). "With the enactment of the LGTCA, the [Maryland] Legislature sought to provide 'a remedy for those injured by local government officers and employees, acting without malice in the scope of their employment, while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts.'" *Rios v. Montgomery County*, 157 Md. App. 462, 475-76, 852 A.2d 1005, 1012 (2004) (quoting *Ashton v. Brown*, 339 Md. 70, 108, 660 A.2d 447, 466 (1995)), *aff'd,* 386 Md. 104, 872 A.2d 1 (2005).

Section 5-304 of the LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim . . . is given within 1 year after the injury." C.J. § 5-304(b)(1). The notice must "be in writing and shall state the time, place, and cause of the injury." C.J. § 5-304(b)(2). Notice "shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant." C.J. § 5-304(c)(1).

Where applicable, "notice is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action." *Renn v. Bd. of Comm'rs of Charles Cty*, 352 F. Supp. 2d 599, 603 (D. Md. 2005). In *Hansen v. City of Laurel*, 420 Md. 670, 25 A.3d 122 (2011), the Maryland Court of Appeals said: "A plaintiff must not only satisfy the notice requirement strictly or substantially, but also plead such satisfaction in his/her complaint. If a plaintiff omits this step, he or she is subject to a motion to dismiss, for instance, based on a failure to state a claim upon which relief can be granted." *Id*. at 694, 25 A.3d at 137.

The notice requirement indisputably applies as to Kessler and Burke, as employees of Carroll County, as well as to Carroll County. For Carroll County, the notice "shall be given in person or by certified mail . . . to the county commissioners or county council." C.J. § 5-304(c)(2).

Defendants also assert (ECF 29-2 at 18 n.11) that the notice requirement applies as to HSCC, pointing to a provision of the LGTCA that includes HSCC within the definition of a "local government." It is found in C.J. § 5-301(d)(26).[10] Plaintiff does not contest this assertion.

It is clear that HSCC is generally considered part of local government for purposes of the LGTCA. But, C.J. § 5-304(a) plainly provides (emphasis added): "This section [*i.e.*, the notice requirement] does *not* apply to an action . . . [a]gainst a nonprofit corporation described in," *inter alia*, § 5-301(d)(26), "or its employees." In other words, the notice requirement in the LGTCA does not apply to actions against HSCC or its employees.

---

[10] The Motion cites C.J. § 5-301(d)(25). But, C.J. § 5-301(d)(25) relates to the Carroll County public transportation authority. Section 5-301(d)(26) is clearly the correct provision. It applies to: "The nonprofit corporation serving as the animal control and licensing authority for Carroll County pursuant to a contract or memorandum of understanding with Carroll County (the Humane Society of Carroll County, Inc.)." *Id*.

Therefore, the following State law counts against the County, Kessler, and Burke shall be dismissed, *without prejudice*, for failure to plead the notice requirement: counts 17, 19, 20, 23, 24, 26, 27, 30, 35, 36, 50, 51, 52, and 53.[11]  If plaintiff wishes to bring State law claims against the County or its employees in a Second Amended Complaint, she must affirmatively plead facts as to the notice requirement.  But, this requirement does not apply to State law claims against HSCC or its employees.

## C. Governmental Immunity

Defendants argue that all State law claims against the County itself should be dismissed under the doctrine of governmental immunity.  ECF 29-2 at 19-22.  A local government, such as the County, is entitled to governmental immunity for common law State tort claims when the conduct on which the suit is based is governmental, not proprietary.  *See, e.g.*, *Gray-Hopkins v. Prince George's Cty.*, 309 F.3d 224, 234 (4th Cir. 2002) ("Under Maryland law, a county 'is immune from liability for tortious conduct committed while the entity was acting in a governmental capacity.'") (citation omitted); *Devi v. Prince George's Cty.*, DKC-16-3790, 2017 WL 3592452, at *2 (D. Md. Aug. 21, 2017) ("A municipality, such as the County, is . . . generally immune from common law tort suits when engaged in governmental, as opposed to proprietary, acts."); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 378 (D. Md. 2011) (stating that, under

---

[11] An additional issue, although not raised by either party, is that the notice requirement in C.J. § 5-304(b)(1) applies to "an action for unliquidated damages." The vast majority of plaintiff's requested relief is in the form of damages. *See* ECF 24 at 55-60. However, plaintiff also requests that her dogs be returned, if possible, which is an apparent request for equitable relief. *See id*. at 60. It is not clear that plaintiff successfully states any claim that would support such a request, nor that the Court could enforce it, given that none of plaintiff's dogs appear to any longer be in the possession of any defendant in this case. Regardless, the case law indicates that the LGTCA's notice requirement applies even when a plaintiff seeks injunctive or other equitable relief alongside damages. *See Abdus-Shahid v. Mayor and City Council of Balt.*, 674 Fed. App'x 267, 273 (4th Cir. 2017); *Hispanic Nat'l Law Enforcement Ass'n v. Prince George's Cty.*, TDC-18-3821, 2020 WL 903205, at *7 (D. Md. Feb. 25, 2020).

Maryland law, "counties enjoy governmental immunity from tort liability with respect to 'nonconstitutional torts based on activity categorized as governmental.'" (cleaned up)); *DiPino v. Davis*, 354 Md. 18, 47, 729 A.2d 354, 369-70 (1999) (stating that a "local governmental entity" is "immune from common law tort suits when engaged in governmental, as opposed to proprietary, acts").

"[A] function is governmental where it 'is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest.'" *Anne Arundel Cty. v. Fratantuono*, 239 Md. App. 126, 136, 196 A.3d 25, 31 (2018) (quoting *Mayor and City Council of Baltimore City v. State, for Use of Blueford*, 173 Md. 267, 276, 195 A. 571, 576 (1937)).  Under this definition, animal control operations, such as the ones at issue in the Amended Complaint, would be governmental, rather than proprietary.  Indeed, plaintiff agrees. *See* ECF 32 at 3.  Likewise, legal representation performed by the County relating to such operations, and the implementation or enforcement of the animal control laws, would qualify as governmental.

The State law claims brought directly against the County in counts 19, 20, 26, 35, 50, 51, and 52 relate to HSCC's animal control operations generally, as well as alleged conduct by the County and the County attorneys in their representation of HSCC.  *See* ECF 24 at 24, 29, 33, 42-45.  These activities would fall under the rubric of a governmental function, for which the County enjoys governmental immunity.

Plaintiff responds that governmental immunity is "waived" for circumstances involving a violation of constitutional rights, when the government has exceeded its statutory authority, or where it has "unlawfully invaded or threatened to invade a plaintiff's personal or property rights."

22

ECF 32 at 3.  Plaintiff is correct that governmental immunity does not apply to alleged State constitutional claims.  *Gray-Hopkins*, 309 F.3d at 234; *DiPino*, 354 Md. at 50-51; 729 A.2d at 371.[12]  But, plaintiff does not appear to have lodged any claims under the Maryland Constitution. Instead, the claims brought directly against the County, which are labelled "harassment," "bad faith," "fraudulent misrepresentation," "misfeasance," and "nonfeasance," appear to be plaintiff's attempt to assert common law State torts, for which governmental immunity applies.

Shenk also argues that governmental immunity should not apply to the County's legal representation of HSCC as part of her replevin suit against HSCC, because the suit did not enforce an animal control law.  But, the legal representation was inextricably intertwined with enforcement of the animal control laws, such as C.L. § 10-615 and C.L. § 10-617.  The costs were incurred in regard to efforts of the County to protect animals.

In sum, the County is entitled to governmental immunity as to the State law claims asserted against it in counts 19, 20, 26, 35, 50, 51, and 52; those claims shall be dismissed.  This ruling has no bearing on any potential State law claims against the County grounded in the Maryland Constitution or the federal Constitution.

### D. Statutory Immunity

The Amended Complaint lodges five State law claims against Burke and Kessler, the County attorneys.  *See* ECF 21 at 25, 29, 30, 33.  These are counts 23, 24, 27, 30, and 36.  The claims concern legal work of Burke and Kessler in representing the County and HSCC during litigation and negotiations with plaintiff.  *See id*. at 22-23, 25-29, 30-33.

---

[12] Governmental immunity also does not apply to claims brought under the federal Constitution. *See, e.g.*, *DiPino*, 354 Md. at 45, 47-50, 729 A.2d at 368-71.

In essence, plaintiff alleges that Burke and Kessler engaged in "harassment," "bad faith," and "fraudulent misrepresentation" when, in the course of their work, they made arguments or engaged in behavior that plaintiff considers to have been factually incorrect or inappropriate. *Id*. Plaintiff brings claims against Burke and Kessler for fraudulent misrepresentation, and against Kessler for harassment and bad faith. *Id*.

Defendants argue that Burke and Kessler are entitled to statutory immunity for their conduct. ECF 29-2 at 31-32. Under C.J. § 5-507(a)(1), "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action."

"Malice in the context of public official immunity means 'conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will, or fraud.'" *Koon as next friend of Glay v. Prince George's Cty.*, DKC-17-2799, 2019 WL 1317401, at *7 (D. Md. Mar. 22, 2019) (quoting *Lee v. Cline*, 384 Md. 245, 268, 863 A.2d 297, 311 (2004). "A plaintiff cannot 'rely on bare allegations that a particular act raises an inference of malice.' . . . Instead, a plaintiff asserting malice 'must point to specific evidence that raises an inference that the defendant's actions were improperly motivated in order to defeat the motion.'" *Koon*, 2019 WL 1317401, at *7 (quoting *Hines v. French*, 157 Md. App. 536, 563, 852 A.2d 1047, 1061 (2004)); *see also Thomas v. City of Annapolis*, 113 Md. App. 440, 459, 688 A.2d 448, 457 (1997) ("[M]alice for the purposes of this statute [i]s an intentional act done knowingly for an improper purpose without legal justification or excuse.").

However, C.J. § 5-507 "is merely a codification of existing common law public official immunity, and common law qualified immunity has no application in tort actions based upon

alleged violations of state constitutional rights or tort actions based upon most so-called 'intentional torts.'"  *Hicks v. Anne Arundel Cty.*, JKB-20-0022, 2021 WL 4804017, at *4 (D. Md. Oct. 14, 2021) (internal citations omitted).  Therefore, "although the statutory text contains no indication that statutory immunity was not intended to apply to intentional or constitutional torts," courts generally have not applied immunity under C.J. § 5-507 to intentional torts.  *Crouch v. City of Hyattsville*, DKC-09-2544, 2010 WL 3653345, at *4-5 (D. Md. Sept. 15, 2010); *see also Lee*, 384 Md. at 305-06, 863 A.2d at 258-59.

Fraudulent misrepresentation is an intentional tort.  *See, e.g.*, *D'Aoust v. Diamond*, 424 Md. 549, 571-72, 36 A.3d 941, 954 (2012); *Hoffman v. Stamper*, 385 Md. 1, 32, 867 A.2d 276, 295 (2005).  Although "harassment" and "bad faith" presumably involve conduct that is intentional, neither constitutes a standalone tort claim in this context.  Even assuming that the Amended Complaint alleges intentional conduct, these counts fail to state a claim, as discussed, *infra*.

### E. State Law Tort Claims

Plaintiff lodges claims of "Destruction of Property" (counts 10, 15, 16, and 57); "Harassment" (counts 17, 19, 21, 23, 31, 32, 33, and 49); "Nonfeasance" (counts 50, 52, 53, 54, and 55); "Misfeasance" (counts 51 and 58); "Malfeasance" (counts 59, 60, and 61); and "Bad Faith" (counts 2, 18, 20, 22, and 24).  Defendants are correct that these counts do not state standalone tort claims or causes of action under Maryland law, at least in any context that is relevant here.  ECF 29-2 at 22, 24.[13]

---

[13] Harassment can form the basis for a legal claim in certain contexts. *See, e.g.*, Md. Code (2021 Repl. Vol.), § 20-611 of the State Government Article (concerning harassment under the Maryland Fair Employment Practices Act); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 751 (1998) (discussing harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

It is possible that the alleged facts supporting these counts might support different claims or legal theories that would be viable.  But again, it is not the Court's role to fashion the claims for relief on behalf of a plaintiff.

### F. Defamation, Negligence, Fraudulent Misrepresentation, and Failure to Supervise

Plaintiff attempts to assert claims under Maryland law for causes of action that, indeed, do exist.  But, plaintiff has failed to include allegations that render the claims legally sufficient.

Shenk pleads three counts of defamation:  one against Smith, one as to Baker, and one as to HSCC.  ECF 21 at 15, 40 (counts 7, 46, and 47).  These are for alleged statements made by Smith and Baker in 2017 and, "more recently," in early 2020 by Baker, when HSCC gave away plaintiff's dogs to other organizations.  *Id*.

Defendants assert that all three counts are barred by the statute of limitations.  For a state law claim such as this one, I must apply the substantive law of the forum state, including its statute of limitations.  *See Brown v. Am. Broad. Co*., 704 F.2d 1296, 1299 (4th Cir. 1983); *see also Coe v. Thermasol, Inc*., 785 F.2d 511, 514 n.5 (4th Cir. 1986) (noting that "federal courts sitting in diversity apply the forum state's statute of limitations").  Therefore, I shall apply Maryland law.

Maryland law provides for a one-year statute of limitations for defamation claims.  C.J. § 5-105.  This statute "begins to run 'when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff.'"  *Hickey v. St. Martin's Press, Inc*., 978 F. Supp. 230, 235 (D. Md. 1997).  Or, phrased differently, "all libel and slander claims must be filed within one year of the date on which the damaging statements were

2000e *et seq*.).  But, these circumstances are not applicable here, where plaintiff has not alleged discrimination on the basis of a protected class.

"Bad faith" may serve as a tort action in certain insurance contexts. *See Allstate Ins. Co. v. Campbell*, 334 Md. 381, 390, 639 A.2d 652, 656 (1994). Again, this is irrelevant here.

improperly communicated." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 508, 665 A.2d 297, 316 (1995).  And, "[a]s a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit." *Newell v. Richards*, 323 Md. 717, 725, 594 A.2d 1152, 1156 (1991).

Ordinarily, a trial court does not grant a motion to dismiss "based on the assertion that the cause of action is barred by the statute of limitations unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 641, 76 A.3d 1076, 1086 (2013); *accord Rounds v. Maryland-Nat. Capital Park & Planning Comm'n*, 441 Md. 621, 655, 109 A.3d 639, 659 (2015).  But when, as here, it is clear from the face of the Amended Complaint that a claim is time barred, the court may consider the affirmative defense of limitations in the context of a motion to dismiss.  *See Goodman*, 494 F.3d at 464; *see also Pressley*, 553 F.3d at 336; *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citation omitted).

Count 15 expressly refers to alleged defamatory conduct in 2017.  Portions of counts 46 and 47 also refer to defamatory conduct in 2017.  Both are plainly and facially time barred.  ECF 21 at 15, 40.  Plaintiff argues the statute of limitations should be waived because it was dangerous for her to sue HSCC or its employees as long as they held her dogs.  ECF 32 at 1-2.  But, this contention does not provide a basis for tolling the statute of limitations.

In contrast, the statute of limitations does not bar those portions of counts 46 and 47 that appear to refer to alleged statements made in early 2020, given that this lawsuit was filed in February 2020.  *See* ECF 21 at 40.  Nonetheless, plaintiff has failed to state a claim as to these allegations.

The tort of defamation consists of four elements: "'(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.'" *Litz*, 434 Md. 623, 641, 76 A.3d 1076; *see also Sullivan v. City of Frederick*, JKB-17-1881, 2018 WL 337759, at *8 (D. Md. Jan. 9, 2018) (quoting *Offen v. Brenner*, 402 Md. 191, 198-99, 935 A.2d 719, 723-24 (Md. 2007)).

"Although a plaintiff need not plead a defamation claim under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, the pleadings in a defamation case must still be sufficiently detailed to enable a defendant to appropriately respond." *Estate of Jones v. St. Thomas More Nursing & Rehab Ctr.*, PJM 09-1419, 2009 WL 3247929, at *3 (D. Md. Oct. 1, 2009). Moreover, every "alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege.'" *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011) (quoting *English Boiler*, 1999 WL 89125, at *3); *see also Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015) ("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement.").

In counts 46 and 47, plaintiff does not allege with any specificity the allegedly defamatory statements, such as specific content and what about the statements was false. Therefore, her defamation claims must fail.

Counts 11 and 12 lodge claims of "negligence" against Brown and Baker for events related to the euthanizing of one of plaintiff's dogs, Missy, while Missy was being held at HSCC. ECF 24 at 18-19. In Maryland, "to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately

resulted from the defendant's breach of the duty.'"   *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013) (quoting *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 131-32, 916 A.2d 257, 270-71 (2007) ) (emphasis omitted); *see Schultz v. Bank of Am., N.A.*, 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010) ("In a negligence case, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'") (quoting *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986)) (alterations in *Schultz*).

The Amended Complaint does not include allegations as to the duty owed to plaintiff by Brown and Baker, or facts as to how Brown or Baker breached that duty.  Instead, the Amended Complaint merely alleges certain facts as to Missy's condition and treatment.  *See* ECF 24 at 18-19.  After defendants moved to dismiss by citing the elements of negligence, plaintiff attempted to use her Opposition to amend her claim by adding substantially greater detail and factual allegations.  *See* ECF 32 at 7-9.  But, as noted, plaintiff cannot amend her Complaint through her briefing.  The negligence counts fail to state a claim.

Plaintiff lodges ten claims of fraudulent misrepresentation against various defendants.  *See* ECF 24 at 25-30, 31-34.  These are contained in counts 25, 26, 27, 28, 29, 30, 34, 35, 36, 37.  The claims largely relate to arguments or positions taken before the State courts in litigation involving plaintiff that plaintiff contends are factually or legally inaccurate.  *See id*.

In an action for intentional or fraudulent misrepresentation, which is the garden variety of fraud and is often described simply as "fraud," the plaintiff ordinarily must show: "(1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the

misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Nails v. S & R, Inc*., 334 Md. 398, 415, 639 A.2d 660, 668 (1994); accord *Thomas v. Nadel*, 427 Md. 441, 451 n. 18, 48 A.3d 276, 282 n. 18 (2012); *Gourdine v. Crews*, 405 Md. 722, 758, 955 A.2d 769, 791 (2008); Sass v. Andrew, 152 Md. App. 406, 429, 832 A.2d 247, 260 (2003).

Of relevance here, a claim of fraudulent misrepresentation is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Under Rule 9(b), a plaintiff alleging claims that sound in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (quotation omitted).

To be actionable, a false representation "must be of a material fact." *Gross v. Sussex, Inc*., 332 Md. 247, 258, 630 A.2d 1156, 1161 (1993). "A 'material' fact is one on which a reasonable person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows ... [the] recipient is likely to regard ... as important.'" *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted).  The "misrepresentation must be made with the deliberate intent to deceive," *Sass*, 152 Md. App. at 430, 832 A.2d at 260 (citing *VF Corp. v. Wrexham Aviation Corp*., 350 Md. 693, 704, 715 A.2d 188 (1998)), and the defendant must "know[ ] that his representation is false" or be "recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings*, F.S.B., 337 Md. 216, 232, 652 A.2d 1117 (1995).

To establish reliance, "the misrepresentation need not have been the only motivation for the plaintiff's actions; it is sufficient that the misrepresentation substantially induced the plaintiff to act." *Nails*, 334 Md. 416-17, 639 A.2d at 669; *see also Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F.Supp.2d 505, 533 (D. Md. 2011). Indeed, "'[i]t is not even necessary that [the plaintiff] would not have acted or refrained from acting as he did unless he had relied on the misrepresentation[.]'" *Id*. at 417, 639 A.2d at 669 (quoting Restatement (Second) of Torts § 546 (1977) ).

Additionally, "a cause of action for fraud" has "a strict requirement of scienter." *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 147, 838 A.2d 404, 433 (2003). "Recovery in a tort action for fraud or deceit in Maryland is based upon a defendant's deliberate intent to deceive." *Id.* at 147, 838 A.2d at 433.

Plaintiff's fraudulent misrepresentation claims fall woefully short under these principles. The allegations are often vague, without specifics as to time, place, and similar information. Although the Amended Complaint includes some conclusory phrasing as to a "deliberate intent to do harm" (ECF 24 at 29) it does not allege any deliberate intent to defraud plaintiff, except in the most conclusory fashion. There is little in the way of allegations of false representations made to plaintiff; instead, the allegations typically seem to be that these representations were made to the State courts.

Likewise, there is little in the way of allegations of any reliance by plaintiff. To the contrary, plaintiff seems to have strenuously disputed these statements at the time. Again, plaintiff attempts improperly to add further details in her Opposition, but this is not permissible. *See* ECF 32 at 9.

Further, plaintiff brings a claim against Brown, entitled "failure to supervise," accusing him of failing properly to supervise his employees as they engaged in illegal activities and defamed plaintiff. ECF 24 at 14 (count 15). Maryland recognizes a claim for negligent failure to supervise. *See, e.g., Marinkovic v. Vasquez*, GLR-14-3069, 2015 WL 3767165, at *10 (D. Md. June 16, 2015). Likewise, a failure to supervise can give rise to liability under 42 U.S.C. § 1983 and *Monell*, 436 U.S. 658, in certain situations involving a "history of widespread abuse." *Wellington v. Daniels*, 717 F.2d 932, 936 (1983). Yet, it is entirely unclear what cause of action or legal theory plaintiff is attempting to pursue. Count 5 contains vague, conclusory allegations. Therefore, this claim must also be dismissed.

Plaintiff may amend her Complaint as to her claims for defamation, negligence, fraudulent misrepresentation, and failure to supervise, insofar as the claims are not barred by the statute of limitations.

### G. Counts 13 and 14

Counts 13 and 14 lodge claims against Smith and Baker for "illegal detention" and "illegal search and seizure," related to an incident involving plaintiff's dog, Missy. ECF 24 at 20. Count 13, for illegal detention, alleges that when plaintiff attempted to take Missy to the veterinarian at an unspecified date and time, Smith stood behind plaintiff's car, so she could not back out and leave. *Id.* Count 14, for illegal search and seizure, alleges that while Smith was blocking plaintiff's car, Baker reached in and "took" Missy, without a court order authorizing her to do so. *Id.* Presumably, these claims are brought under the Fourth Amendment or its equivalent in the Maryland Declaration of Rights.

The Motion's sole argument as to counts 13 and 14 is that the claims are time barred under Maryland's three-year statute of limitations for a civil action, set out in C.J. § 5-101. *See* ECF

29-2 at 23-24. Specifically, the Motion argues that these claims do not arise out of events alleged in the original Complaint, and thus they do not relate back to the filing of the original Complaint on February 20, 2020. *Id.*; *see* ECF 1. If counts 13 and 14 are brought under § 1983, as seems likely, then they are subject to the three-year statute of limitations in C.J. § 5-101. *See Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 388 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).

The Amended Complaint does not specify the dates of the pertinent events.[14] But, one can infer that they could not have occurred after August 2017, because that is when Missy was allegedly euthanized. *See* ECF 24 at 18. This would put the events more than three years before the date of the filing of the Amended Complaint, on May 6, 2021, and thus outside of the statute of limitations, unless these claims relate back to the original filing of the suit on February 20, 2020.

An amendment relates back to an original pleading if, *inter alia*, it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). A key factor is "whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading." Wright & Miller § 1497. Here, although the original Complaint made many allegations as to the seizure and treatment of plaintiff's dogs, including Missy, it made absolutely no allegation as to Smith blocking plaintiff's car, nor to the seizure of Missy by Baker in the manner described in counts 13 and 14. *See* ECF 1 at 9-13. Plaintiff adds greater detail in her Opposition. But, as stated, plaintiff may not amend her Complaint via the Opposition.

---

[14] The Opposition states they occurred in August of 2017, but plaintiff may not amend her Complaint via her briefing. *See* ECF 32 at 7.

Defendants could not have reasonably had notice, from the original Complaint, that plaintiff would raise the claims in counts 13 and 14. Therefore, the standard in Rule 15 is not met.

Alternatively, Fed. R. Civ. P. 15(c)(1)(A) provides that an amendment relates back when "the law that provides the applicable statute of limitations allows relation back." But, the Maryland Court of Special Appeals has observed that the standard for relating back under Maryland law "is narrower in scope than its federal counterpart." *Youmans v. Douron, Inc.*, 211 Md. App. 274, 29-91, 65 A.3d 185, 194 (2013). Specifically, the standard in Maryland depends on whether the operative factual situation in the amended pleading remains the same as in the original pleading. *Id.*; *Priddy v. Jones*, 81 Md. App. 164, 169-71, 567 A.2d 154, 157 (1989). But, the operative facts do not remain the same with respect to counts 13 and 14, because these facts were not alleged in the original Complaint.

In sum, counts 13 and 14 must be dismissed as time barred. Because these claims are time barred, dismissal of these counts is with prejudice.

### H. Conspiracy (Counts 40, 41, 42, and 43)

Counts 40 through 43, captioned "Conspiracy," allege, in essence, that Kessler, Baker, Smith, and Brown conspired to deprive plaintiff of her dogs, in violation of her Fourth Amendment rights. "Pursuant to the intracorporate conspiracy doctrine, a plaintiff typically cannot bring a civil conspiracy claim, based on an agreement between 'agents of the same legal entity, when the agents act in their official capacities.'" *Hicks v. Ferreyra*, 396 F. Supp. 3d 564, 580 (D. Md. 2019) (quoting *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1867 (2017)).[15] Baker, Smith, and

---

[15] "Nor is the immunity granted under the doctrine to the agents and the corporation destroyed because the agents are sued individually." *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985).

Brown are all employees of HSCC.  Therefore, any conspiracy would have to be involve Kessler to be adequately pled.

A claim for civil conspiracy, pursuant to § 1983, requires that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996).  Section 1985(3) of 42 U.S.C. also provides a private cause of action for certain conspiracies to violate constitutional rights.  In order to establish a claim under § 1985(3), the plaintiff must prove that:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Society Without A Name*, 655 F.3d at 346 (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir.1995)).

Furthermore, a plaintiff must demonstrate "'an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights.'"  *Id.* (quoting *Simmons*, 47 F.3d at 1377) (alterations in *A Society Without A Name*).  Moreover, conspiracy claims must fail if they are pled in a conclusory manner and devoid of "concrete, supporting facts."  *See A Society Without a Name*, 655 F.3d at 346-47.

Here, plaintiff makes various allegations as to the conduct of Kessler, Baker, Smith, and Brown.  But, the allegations as to an agreement or meeting of the minds involving Kessler are conclusory at best.  Indeed, Kessler's involvement in the conspiracy appears simply to be that she filed, and subsequently litigated, the lawsuit to recover HSCC's "cost of care" from plaintiff.  ECF 24 at 36-37.  Furthermore, as to § 1985(3), there is no allegation that defendants were motivated

by any "specific class-based, invidiously discriminatory animus" towards plaintiff.   Because plaintiff has not adequately alleged a conspiracy involving Kessler, these counts fail.  Plaintiff may amend her suit as to these claims.

### I. Invasion of Privacy (Counts 44 and 45)

Count 44 asserts an "invasion of privacy" by HSCC, in violation of the Fourth Amendment, for allegedly releasing photos of the interior of plaintiff's home to "other parties."  ECF 24 at 39. Count 45 lodges the same claim against Baker.  *Id*.

The Court is aware of no controlling case suggesting that Fourth Amendment concerns are implicated in this context.   Indeed, the Fourth Circuit has held that the photographing of an individual's home by reporters accompanying the execution of an arrest warrant did not constitute a seizure within the meaning of the Fourth Amendment, because "a seizure occurs only when there has been a 'meaningful interference with an individual's possessory interests in . . . property.'" *Wilson v. Layne*, 141 F.3d 111, 115 (4th Cir. 1998) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

Defendants contested counts 44 and 45 on these grounds in the Motion. ECF 29-2 at 27-28.  Plaintiff had no response.  Furthermore, these counts allege scant detail as to the actual alleged incidents in question.  Therefore, the Court will dismiss these counts.

Plaintiff appeared to intend a federal constitutional claim in these counts.  But, Maryland State law recognizes a tort for invasion of privacy.  *See, e.g.*, *Furman v. Sheppard*, 130 Md. App. 67, 73, 744 A.2d 583, 585 (2000).  Therefore, plaintiff may amend her suit as to these claims.

### J. Maryland Public Information Act (Count 56)

Count 56 does not name a defendant.  *See* ECF 24 at 47-48.  But, it appears to allege that Baker, presumably on behalf of HSCC, denied requests by plaintiff under the Maryland Public

Information Act ("MPIA"), Md. Code (2014 Vol., 2018 Sup.), § 4-101, *et seq*. of the General Provisions Article ("G.P.").

Although the MPIA establishes a general right "to inspect any public record at any reasonable time," G.P. § 4-201(a)(1), a "public record" refers only to "documentary material" that "is made by a unit or an instrumentality of the State or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business." G.P. § 4-101(k)(1). And, a "political subdivision" means only a county, municipal corporation, unincorporated town, school district, or special district. G.P. § 4-101(j).

HSCC is not a unit or instrumentality of the State, nor a political subdivision within the meaning of the statute. Thus, the MPIA's obligations do not apply to it. It follows that this claim must be dismissed. Because no new allegations could make this claim viable, dismissal will be with prejudice.

### K. Counts 9, 48, 62, 63, 64, and 65

Counts 9, 48, 62, 63, 64, and 65 assert various claims under the Eighth and Fourteenth Amendments against the County or HSCC. *See* ECF 24 at 17-18, 40-41, 52-54.

A municipality may be subject to suit under § 1983. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. at 690. In the seminal case of *Monell*, the Supreme Court determined that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only if those defendants were executing an official policy or custom of the local government that resulted in a violation of the plaintiff's rights. *Id*. at 690-91; *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). But, liability attaches "only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S.

378, 384, (1989) (emphasis in original); accord *Holloman v. Markowski*, 661 Fed. App'x 797, 799 (4th Cir. 2016) (per curiam), cert. denied, ___ U.S. ___, 137 S. Ct. 1342 (2017).

Defendants do not contest that HSCC, as a private actor operating under color of state law in the provision of animal control services for the County, may be subject to *Monell* liability. *See* ECF 29-2 at 29 n.13.

In *Connick v. Thompson*, 563 U.S. 51, 60 (2011), the Supreme Court explained (emphasis in *Connick*):

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (citing *Monell*, 436 U.S. at 665-683, 98 S.Ct. 2018). They are not vicariously liable under § 1983 for their employees' actions. *See id.*, at 691, 98 S.Ct. 2018; *Canton*, 489 U.S. at 392, 109 S. Ct. 1197; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (collecting cases).

A viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights.  See, e.g., *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).  However, a municipality cannot be liable in a § 1983 action under a theory of respondeat superior.  *Monell*, 436 U.S. at 693-94.  Rather, "[i]t is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'"  *Lozman v. City of Riviera Beach*, ___ U.S. ___, 138 S. Ct. 1945 (2018) (citation omitted); *see Milligan v. City of Newport* News, 743 F.2d 227, 229 (4th Cir. 1984).

In other words, a municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is . . . the 'moving force' behind the particular constitutional violation."  *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) (internal citations omitted); *see Moore v. Howard Cty. Police Dep't*, CCB-10-1430, 2010 WL 4722043, at *2 (D. Md. Nov. 15, 2010).  As the *Monell* Court said, 436 U.S. at 694, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983."

The Amended Complaint is quite clear that the counts in question involve specific acts by individual employees of the County or HSCC, without an adequate allegation that such acts were attributable to a policy or custom of the County or HSCC.  For example, the Amended Complaint alleges that HSCC denied plaintiff access to her property when she visited on May 24, 2017 (ECF 24 at 17-18); that HSCC failed to return plaintiff's non-animal property to prevent her from recovering her dogs (*id*. at 40-41); and that HSCC and the County improperly destroyed or released plaintiff's dogs and attempted to collect a "cost of care" from her (*id*. at 53-54).

In other words, these claims seek to impose respondeat superior liability on the County and HSCC, without linking the alleged actions to any unconstitutional policy or custom, which is precisely what is not permitted under *Monell*.  In her Opposition, plaintiff asserts various policies and customs by the County and HSCC, and also attempts to label other counts as *Monell* claims.  *See* ECF 32 at 10.  But, as noted, plaintiff may not amend her suit via her Opposition.  The Court will dismiss these counts, with leave to amend.

### L. Summary Judgment Counts (Counts 1, 3, 4, 6, and 8)

Defendants moved for summary judgment as to five counts: illegal search and seizure (counts 1, 3, and 4); illegal entry/trespass (count 6); and malicious prosecution (count 8). *See* ECF 29-2 at 32-37.[16]  For these counts, defendants apparently concede that plaintiff has stated a claim.

As noted, summary judgment ordinarily is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Pont de Nemours and Co.*, 637 F.3d at 448-49. Here, although plaintiff has not filed a Rule 56(d) affidavit, she plainly disputes numerous facts asserted in the Motion. *See* ECF 32 at 2.  Given plaintiff's pro se status and the fact that defendants have not moved to dismiss counts 1, 3, 4, 6, and 8, these claims may proceed.

### V.  Conclusion

For the reasons stated above, I shall grant the Motion in part and deny it in part.  I shall deny the Motion with respect to counts 1, 3, 4, 6, and 8.  I shall grant the Motion with respect to all other counts.

I shall grant the Motion with prejudice as to counts 13, 14, 15, and 56, meaning plaintiff cannot attempt to revive them in a Second Amended Complaint.  Dismissal as to the other counts is without prejudice.

Within 28 days of the docketing of the accompanying Order, plaintiff is granted leave to file a Second Amended Complaint that complies with the principles articulated in this Memorandum Opinion.

An Order follows, consistent with this Memorandum Opinion.

---

[16] As noted, defendants moved for summary judgment as to count 9 (*see* ECF 29-2 at 37-38), but they also moved to dismiss count 9. *See id*. at 29-31.

Date:   January 27, 2022                           _____/s/_____

                                                   Ellen L. Hollander
                                                   United States District Judge