**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **LAURA SHENK,** | |
| *Plaintiff,* | |
| **v.** | Civil No. 1:20-cv-00443-JRR |
| **HUMANE SOCIETY OF**<br>**CARROLL COUNTY, INC.,** *et al.,* | |
| *Defendants.* | |

**MEMORANDUM OPINION**

This matter comes before the court on Defendants Edward Smith and Charles Brown's Motion for Summary Judgment.  (ECF No. 66; the "Motion.")  The submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, by accompanying order, the Motion will be granted.

**I.       BACKGROUND**

This action arises out of the alleged decisions by Defendant Smith to obtain search and seizure warrants to remove dogs and property from Plaintiff Laura Shenk's home in February and March 2017, and the subsequent decision to apply for criminal charges against Plaintiff. According to Plaintiff, Smith obtained a search and seizure warrant by making false statements and representations to a judge.  (ECF No. 24 at 9.)  Plaintiff further alleges that Smith applied for criminal charges against her without probable cause.  *Id.* at 16.

**A.       Procedural Background**

On February 20, 2020, Plaintiff filed her original complaint against the Humane Society of Carroll County, Inc. ("HSCC"), Carroll County, MD Government ("the County"), Edward Smith, Charles Brown, Karen Baker, and Gail Kessler.  (ECF No. 1.)  On May 6, 2021, Plaintiff filed her

Amended Complaint (the "Complaint") asserting 65 counts under both federal and Maryland law.[1] (ECF No. 24.)

On motion by Defendants (ECF No. 29), the Honorable Judge Ellen Hollander dismissed with prejudice counts 13, 14, 15, and 56; denied the motion as to counts 1, 3, 4, 6, and 8; dismissed without prejudice the remaining 56 counts; and allowed Plaintiff 28 days to file a second amended complaint. (ECF No. 36.). On March 30, 2022, Plaintiff filed a second amended complaint, which the court later struck for non-compliance with the Federal Rules of Civil Procedure and Local Rules of the District of Maryland. (ECF Nos. 50 and 51.) Therefore, the remaining claims are as follows: Illegal Search and Seizure against Smith (Counts 1, 3, and 4); Illegal Entry/Trespass against Brown (Count 6); and Malicious Prosecution against Smith (Count 8). (ECF No. 24 at 9-17.) Now that discovery has closed, Defendants move for summary judgment on Plaintiff's remaining claims. (ECF No. 66.)

### B.   Relevant Statutory Background

The Maryland animal cruelty laws are codified at Maryland Code, Criminal Law Article, §§ 10–601, *et seq.* Relevant here, Maryland statutory law prohibits abuse or neglect of an animal. For example, "[a] person may not . . . unnecessarily fail to provide the animal with nutritious food in sufficient quantity; necessary veterinary care; proper drink; proper air; proper space; proper shelter; or proper protection from weather." MD. CODE ANN., CRIM. LAW § 10–604(a).

---

[1] The captions include, among others: "Illegal Search and Seizure" (Counts 1, 3, 4, and 14); "Destruction of Property" (Counts 10, 15, 16, and 57); "Harassment" (Counts 17, 19, 21, 23, 31, 32, 33, and 49); "Nonfeasance" (Counts 50, 52, 53, 54, and 55); "Misfeasance" (Counts 51 and 58); "Malfeasance" (counts 59, 60, and 61); "Bad Faith" (Counts 2, 18, 20, 22, and 24); "Defamation" (Counts 7, 46, and 47); and "Fraudulent Misrepresentation" (Counts 25, 26, 27, 28, 29, 30, 34, 35, 36, 37, and 38). Some counts simply cross-reference other counts despite pertaining to a different Defendant. For example, Count 17 lodges a claim of "harassment" against HSCC. (ECF 24 at 22-23.) Counts 18 through 24 contain claims of harassment and bad faith about other Defendants merely by reference to Count 17. *Id.* at 24-25.

Additionally, § 10–606 provides that "[a] person may not intentionally mutilate an animal; torture an animal . . . ." *Id.* § 10–606(b).

"Since 1900, Maryland law has authorized members of humane societies to serve as animal control units and to help carry out the State's laws concerning the protection of animals from abuse or neglect." *Rohrer v. Humane Society of Washington County*, 454 Md. 1, 9 (2017). "The animal cruelty law currently defines 'humane society' as 'a society or association incorporated in Maryland for the prevention of cruelty to animals.'" *Id.* at 9-10 (citing MD. CODE ANN., CRIM. LAW § 10–601(d)). "Although a humane society is a private entity, the criminal statutes concerning animal cruelty delegate to humane societies certain powers to carry out the State's policy against animal cruelty." *Id.* at 10. "For example, a humane society officer may arrest anyone 'committing a misdemeanor that involves cruelty to an animal.'" *Id.* (quoting MD. CODE ANN., CRIM. LAW § 10-609). "An officer or authorized agent of a humane society, or a police officer or other public official required to protect animals may seize an animal if necessary to protect the animal from cruelty." MD. CODE ANN., CRIM. LAW § 10-615(b)(1). Further, MD. CODE ANN., CRIM. LAW § 10-615(c)(1), provides:

> (c)(1) If an animal is impounded, yarded, or confined without necessary food, water, or proper attention, is subject to cruelty, or is neglected, an officer or authorized agent of a humane society, a police officer, another public official required to protect animals, or any invited and accompanying veterinarian licensed in the State, may:
>> (i) enter the place where the animal is located and supply the animal with necessary food, water, and attention; or
>> (ii) seize the animal if seizure is necessary for the health of the animal.
> (2) A person who enters a place under paragraph (1) of this subsection is not liable because of the entry.

## II.    UNDISPUTED MATERIAL FACTS[2]

Defendant Edward Smith is an Animal Control Officer for HSCC.  (Defs.' Mot., Exhibit 1, Edward Smith Decl., ECF No. 66-2 ¶ 1.)  Defendant Charles Brown is the former Executive Director of HSCC.  *Id.*  On February 12, 2017, Smith received a phone call from Central Carroll Animal Emergency and spoke to Dr. Lori Brewer who informed him that she was concerned that a cat in her care had been the victim of abuse and/or neglect at the hands of its owner, Plaintiff.  (Smith Decl. ¶ 2.)  Based on the information Smith learned from Dr. Brewer, he began an investigation into the matter.  *Id.* ¶ 3.

### February 2017 Search and Seizure Warrant

Smith went to Plaintiff's residence in Carroll County, Maryland to check on the health and condition of the cat.  (Smith Decl. ¶ 4.)  Based upon Smith's observations at Plaintiff's house, the condition of the cat, and Plaintiff's refusal to allow Smith to inspect the dogs he observed at her residence, Smith submitted an Application for Search and Seizure Warrant.  (Smith Decl. ¶¶ 4-15; Pl.'s Resp. to Defs.' Mot. to Dismiss, Exhibit 1, February 2017 Search and Seizure Warrant, ECF No. 32-1 at 28-33, 36-37.)  In support for the Application for Search and Seizure Warrant, Smith set forth a four-page probable cause statement.  (Exhibit 1, February 2017 Search and Seizure

---

[2] "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may… (2) consider the fact undisputed for purposes of the motion."  FED. R. CIV. P. 56(e)(2).  Because Plaintiff did not respond to the Motion, she has failed to address Defendants' assertions of fact as set forth in its Motion.  Accordingly, the court will treat the facts asserted by Defendants as undisputed.

The court further notes that the Motion is identical to the motion for summary judgment Defendants filed at ECF No. 13 and ECF No. 29.  Because of the re-filings, the ECF number on the Motion and corresponding exhibits are not clear, and the corresponding exhibits bear ECF No. 13 and ECF No. 66.  Additionally, the court notes that in his affidavit, Smith states: "A true and correct copy of the Application for Statement of Charges that I filed against Ms. Shenk is attached to this affidavit."  (Smith Decl. ¶ 29.)  There is, however, no copy of the Application for Statement of Charges attached to the affidavit.  That notwithstanding, a copy of the Application for Statement of Charges is in the record before the court and attached to Plaintiff's response to Defendants' motion to dismiss or, alternatively, summary judgment filed at ECF No. 32-1.  Therefore, the citations to the Application for Statement of Charges will be to ECF No. 32-1.  Lastly, Defendants did not attach the Applications for Search and Seizure Warrants nor the signed Search and Seizure Warrants.  Those documents, however, are also in the record before the court and attached to Plaintiff's response to Defendants' motion to dismiss, or alternatively, summary judgment filed at ECF No. 32-1.

Warrant, ECF No. 32-1 at 28-32.)  Smith alleged that the facts contained within the application established probable cause to believe that Plaintiff was violating MD. CODE ANN., CRIM. LAW §§ 10-604, 10-615.  *Id.* at 28.  The Application for Search and Seizure Warrant was signed and issued by Honorable Thomas F. Stansfield of the Circuit Court for Carroll County on February 14, 2017. *Id.* at 28-33, 36-37.  The warrant allowed officers, with necessary and proper assistants, to search Plaintiff's residence, and search for evidence of animal cruelty/neglect.  *Id.* at 36.  It further allowed officers to seize animals, cages, carriers, medications/drugs, food, food/water dispensers, containers of animals and/or supplies, and veterinarian records.  *Id.* at 37.  Smith executed the search warrant and seized three of Plaintiff's dogs on February 21, 2017.  (Smith Decl. ¶ 23.)

**March 2017 Search and Seizure Warrant**

After execution of the February 2017 search and seizure warrant and seizure of three of Plaintiff's dogs, a licensed veterinarian examined the three dogs.  (Smith Decl. ¶ 23.)  The veterinarian examinations revealed that the three dogs tested positive for "whip worm," which may develop from living in unsanitary conditions.  *Id.* ¶ 24.  The three dogs were also severely malnourished and under-weight.  *Id.*  The standard proper protocol is that all dogs on the premise be treated for whip worm.  *Id.*

On March 3, 2017, after Plaintiff failed to take the necessary steps to secure the health and safety of the remaining dogs in her possession, Smith submitted a second Application for Search and Seizure Warrant.  (Search and Seizure Warrant, ECF No. 32-1 at 38-41.)  Smith alleged that the facts contained within the application established probable cause to believe that Plaintiff was violating MD. CODE ANN., CRIM. LAW. §§ 10-604, 10-615.  *Id.* at 38.  The warrant was signed and issued by the Honorable Thomas F. Stansfield of the Circuit Court for Carroll County.  *Id.* at 34-35.  The warrant allowed officers, with necessary and proper assistants, to search Plaintiff's

residence and search for evidence of animal cruelty/ neglect.  *Id.* at 34.  It further allowed officers to seize animals, cages, carriers, medications/drugs, food, food/water dispensers, containers of animals and/or supplies, and veterinarian records.  *Id.* at 35.  Smith seized eight remaining dogs on March 3, 2017.  (Smith Decl. ¶ 26.)  The eight dogs were subsequently taken to the veterinarian, and six of the seven dogs seized from the inside of the home tested positive for whip worm.  *Id.* The dog outside the home tested negative for whip worm, but positive for round worm.  *Id.*  The living conditions and overall health conditions were found to be substandard and indicated neglect/abuse.  *Id.*

### Application for Statement of Charges

Based upon his observations at Plaintiff's property, the visibly unhealthy condition of the dogs seized from Plaintiff, and the information provided by the veterinarians who treated the dogs after they were removed from Plaintiff's home, Smith filed an Application for Statement of Charges.  (Smith Decl. ¶ 27; Pl.'s Resp. to Defs.' Mot. to Dismiss, Exhibit 1, Application for Statement of Charges, ECF No. 32-1 at 52-55.)  Smith authored a three-page probable cause statement detailing events that occurred in Carroll County, Maryland, and that same day, Plaintiff was formally charged based upon the facts contained in Smith's application.  (Application for Statement of Charges, ECF No. 32-1 at 52-55.)

A summons was issued on March 20, 2017, and served on April 5, 2017.  (Defs.' Mot., Exhibit 3, District Court Criminal Docket Sheet, ECF No. 66-4.)  Plaintiff was charged with one count of aggravated cruelty to animals, in violation of  MD. CODE ANN., CRIM. LAW § 10-606;[3]

---

[3] MD. CODE ANN., CRIM. LAW § 10-606 provides, in part:

      (b) A person may not:
          (1) intentionally:
               (i) mutilate an animal;
               (ii) torture an animal;
               (iii) cruelly beat an animal;

twenty counts of animal cruelty, in violation of MD. CODE ANN., CRIM. LAW § 10-604;[4] one count

of obstructing and hindering; and two counts of failing to have a proper outdoor dog shelter.  *Id.*

On May 23, 2017, the Carroll County State's Attorney's Office *nol prossed* the charges.[5]  *Id.*

**2017 State Court Civil Proceeding**

On March 6, 2017, Plaintiff filed a replevin action in the District Court for Carroll County,

Case No. 10-02-0000550-2017, to recover her dogs and other property.  (Defs.' Motion, 2017

District Court Civil Docket Sheet, ECF No. 66-5.)  The petition was heard and denied.  (Defs.'

Mot., Exhibit 6, Circuit Court Memorandum Opinion and Order, ECF No. 66-7 at 2.)  Plaintiff

---

        (iv) cruelly kill an animal; or
        (v) engage in sexual contact with an animal;
  (2) cause, procure, or authorize an act prohibited under item (1) of this subsection; or
  (3) except in the case of self-defense, intentionally inflict bodily harm, permanent disability, or death on an animal owned or used by a law enforcement unit.

[4] MD. CODE ANN., CRIM. LAW § 10-604 provides, in part:

  (a) A person may not:
    (1) overdrive or overload an animal;
    (2) deprive an animal of necessary sustenance;
    (3) inflict unnecessary suffering or pain on an animal;
    (4) cause, procure, or authorize an act prohibited under item (1), (2), or (3) of this subsection; or
    (5) if the person has charge or custody of an animal, as owner or otherwise, unnecessarily fail to provide the animal with:
        (i) nutritious food in sufficient quantity;
        (ii) necessary veterinary care;
        (iii) proper drink;
        (iv) proper air;
        (v) proper space;
        (vi) proper shelter; or
  (vii) proper protection from the weather.

[5] "A *nolle prosequi* is an official declaration by the State, announcing that it will not pursue the charges in a particular charging document." *In re Darren M.*, 358 Md. 104, 112 (2000).  Brian DeLeonardo, the State's Attorney's for Carroll County, explained some of the reasons for the decision to enter the charges *nolle prosequi* in a letter to Brown, dated June 7, 2017.  (Amended Complaint, Exhibit 1, Brian DeLeonardo Letter, ECF No. 24-1 at 1-5.)  The letter explained that the decision was made because of difficulties related to Smith's involvement in the case, including his adversarial relationship with Plaintiff; his failure to follow policy that required a co-affiant from the Sheriff's Office on the second warrant application; and statements Smith made to the press and on social media following his application for charges. *Id.*

appealed the decision to the Circuit Court for Carroll County, Case No. C-06-cv-18-000142. (Defs.' Mot., Exhibit 5, Circuit Court Civil Docket Sheet, ECF No. 66-6.)

After a six-day trial, the Honorable Judge Barry Hughes found that both search and seizure warrants were supported by probable cause and properly executed. (Circuit Court Memorandum Opinion and Order, ECF No. 66-7 at 23-24.) Judge Hughes further ruled that even after the dismissal of the criminal charges against Plaintiff, the dogs were lawfully held by HSCC under the provisions of the MD. CODE ANN., CRIM. LAW § 10-615. *Id.* Judge Hughes denied Plaintiff's petition and entered judgment in favor of HSCC. *Id.* at 24. Plaintiff appealed Judge Hughes' decision to the Appellate Court of Maryland. (Circuit Court Civil Docket Sheet, ECF No. 66-6 at 30). The appeal was treated as a petition for writ of certiorari to the Supreme Court of Maryland. *Id.* at 31. On October 23, 2019, the petition was denied. *Id.*

**2019 State Court Civil Proceeding**

On August 30, 2019, Plaintiff filed a second replevin action against the HSCC in the District Court for Carroll County, Case No. D-102-cv-19-009366. (Defs.' Mot., Exhibit 7, District Court Civil Docket Sheet, ECF No. 66-8.) Plaintiff sought the return of six dogs that were impounded by HSCC. (Defs.' Mot., Exhibit 8, Memorandum Opinion and Order of Court Background, ECF No. 66-9 at 1.) Following a trial in the District Court on January 17, 2020, the Honorable Judge Brian D. Green issued a writ of replevin "directing that Shenk was entitled to return of the dogs from the [HSCC] conditioned on payment of the sum of $29,921.13 to [HSCC] for fees, costs, and expenses incurred by [HSCC] pursuant to [MD. CODE ANN., CRIM. LAW] § 617(d)(2)." *Id.* at 1-2. Neither party appealed, and instead, on January 27, 2020, Plaintiff filed a motion to set aside judgment due to fraud, mistake, or irregularity. *Id.* at 3. Attached as an exhibit to the motion was an email exchange between Plaintiff and the HSCC confirming that the HSCC

was no longer in possession of Plaintiff's dogs.   (Memorandum Opinion and Order of Court Background, ECF No. 66-9 at 2.)   The email explained that the surviving dogs had been adopted because "Shenk was 'given notice by Judge Green to retrieve [her] animals [and that] [p]ursuant to Maryland Criminal Law § 10-617 (c)(1), 72 hours ha[d] elapsed since [Shenk] was given notice and [Shenk] failed to retrieve her dogs.'"   *Id.*

Judge Green held a hearing on Plaintiff's motion on February 28, 2020.   *Id.*   During the hearing, he determined that the HSCC had failed to provide Plaintiff the seventy-two-hour advanced notice before allowing her dogs to be adopted.   *Id.* at 4-5.   Because the HSCC had not complied with the statutory notice provision and the HSCC was no longer in possession of the dogs, Judge Green deemed his prior restitution requirement moot.   (District Court Civil Docket Sheet, ECF No. 66-9.)   The HSCC appealed Judge Green's decision to the Circuit Court for Carrol County, Case No. C-06-cv-20-000139.   (Memorandum Opinion and Order of Court Background, ECF No. 66-9.)   The Circuit Court affirmed Judge Green's findings in a written opinion.   *Id.* at 9.

## III.   LEGAL STANDARD

### Federal Rule of Civil Procedure 56

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).   "Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).   "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"   *Id.* (citing FED. R. CIV. P. 56(e)).   "Furthermore, neither

[u]nsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of [a]ny proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered[.]" *Id.* (internal citations and quotations marks omitted).

A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

Further, in undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Critically, on a Rule 56 motion, the court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations

at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual

disputes, including issues of witness credibility.  *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

## IV.  ANALYSIS

### A.  <u>Count 8 – Malicious Prosecution</u>[6]

Count 8 is titled "Malicious Prosecution."  (ECF No. 24 at 16.)  Defendants argue that

Smith is entitled to summary judgment on Plaintiff's malicious prosecution claim because

probable cause existed for Smith to apply for criminal charges against Plaintiff.  (ECF No. 66-1 at

18.)

A "malicious prosecution claim under [42 U.S.C.] § 1983 is properly understood as a

Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the

common law tort."  *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000).  There are three

elements for a malicious prosecution claim under § 1983: "(i) the suit or proceeding was instituted

without any probable cause; (ii) the motive in instituting the suit was malicious . . .; and (iii) the

prosecution terminated in the acquittal or discharge of the accused."  *Thompson v. Clark*, 142 S.

Ct. 1332, 1338 (2022) (citing T. Cooley, LAW OF TORTS 180, 181 (1880)) (internal quotation marks

omitted).  "[A] Fourth Amendment claim under § 1983 for malicious prosecution does not require

the plaintiff to show that the criminal prosecution ended with some affirmative indication of

innocence," but only "that the criminal prosecution ended without a conviction."  *Id.* at 1341.

---

[6] It is unclear whether Plaintiff seeks to bring a common law malicious prosecution claim or a malicious prosecution claim under the Fourth Amendment.  To the extent Plaintiff asserts a common law malicious prosecution claim, Maryland law applies.  A federal district court considering state common law claims applies the substantive law of the forum state.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  The substantive law of the forum state includes its choice-of-law rules.  *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  Maryland courts ordinarily apply the tort law of the place where the tort occurred under the doctrine of *lex loci delicti*.  *Sherrod v. Achir,* 149 Md. App. 640, 647 (2003).  In the present case, the alleged tort occurred in Carroll County, Maryland.  Therefore, Maryland law applies.

Under Maryland law, "[t]o prevail on a claim of malicious prosecution, the plaintiff must demonstrate '1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff.'" *Barnes v. Montgomery Cnty., Md.*, 798 F. Supp. 2d 688, 698 (D. Md. 2011) (quoting *Heron v. Strader*, 361 Md. 258, 264 (2000)).

Plaintiff's malicious prosecution claim hinges on the probable cause element.[7]   To prevail on this claim, Plaintiff must establish that the Smith's Application for Statement of Charges was not supported by probable cause.   *See Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) (explaining that to prevail on a malicious prosecution claim "the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure").

"Probable cause 'is not a high bar.'" *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). "Probable cause is 'a probability or substantial chance of criminal activity, not an actual showing of such activity,' and it is assessed based on the totality of the circumstances." *Nero v. Mosby*, 890 F. 3d 106, 130 (4th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). In *Gladding Chevrolet, Inc. v. Fowler*, the Supreme Court of Maryland explained:

> Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged. *Nance v. Gall*, 187 Md. 656, 669, 50 A.2d 120, 126. What facts are sufficient to show want of probable cause in any case is, of course, a question of law for the court; but

---

[7] It is undisputed that a criminal proceeding was instituted against Plaintiff which was later *nol prossed*.  (Defs.' Mot., District Court for Carroll County Docket Sheet, ECF No. 66-3.)  The outcome therefore was favorable to Plaintiff. *See Vales v. Preciado*, No. CV DKC 05-2339, 2006 WL 8457080, at *7 (D. Md. July 28, 2006) (finding that there was sufficient evidence for a favorable outcome where the criminal charges were nol prossed); *Hines v. French*, 157 Md. App. 536, 554 (2004) (stating that "[a] *nol pros* acts as a dismissal and, thus, the prosecution of appellant for negligent driving ended in her favor").

whether such facts are proved by the evidence is a question for the jury. *Cooper v. Utterbach*, 37 Md. 282, 317; *Campbell v. Baltimore & Ohio R. Co.*, 97 Md. 341, 344, 55 A. 532; Stansbury v. Luttrell, 152 Md. 553, 556, 137 A. 339; *Stewart v. Sonneborn*, 98 U.S. 187, 25 L.Ed. 116, 119. If the facts relied on to constitute probable cause, or the inferences to be drawn therefrom, are clear and undisputed, the question is one of law for the court; but if the evidence or inferences to be drawn therefrom are disputed, it becomes a mixed question of law and fact. *Nance v. Gall*, 187 Md. 656, 669, 50 A.2d 120, 126.

264 Md. 499, 506 (1972) (quoting *Kennedy v. Crouch*, 191 Md. 580, 590-591 (1948)); *see Staunton v. Goshorn*, 94 F. 52, 57 (4th Cir. 1899) (explaining "[w]hether or not there is probable cause for the institution of a criminal proceeding is sometimes a question of law and sometimes a question of fact.  Where the facts are undisputed it is a question of law, and should be determined by the court; otherwise, it is one of fact and for the jury."); *Boyd v. Cross*, 35 Md. 194, 197 (1872) (explaining "[a]s to the existence of the facts relied on to constitute the want of probable cause, that is a question for the jury; but what will amount to the want of probable cause in any case, is a question of law for the court.").

To the extent Plaintiff takes issue with the information contained with Smith's Application for Statement of Charges, Plaintiff "cannot challenge a probable-cause affidavit, such as an application for Statement of Charges, unless [she] shows that the affiant 'knowingly and intentionally, or with reckless disregard for the truth,' included a 'false statement.'"  *Nero v. Mosby*, 890 F.3d 106, 128 (4th Cir. 2018) (quoting F*ranks v. Delaware*, 438 U.S. 154, 155-56 (1978).  Plaintiff has not provided any evidence to suggest or demonstrate that Smith knowingly or intentionally included false statements in his Statement of Application for Charges.  *See Nero, supra.*  While Plaintiff alleges in her Complaint that the Carroll County State's Attorney's Office "indicated that there was no probable cause," (ECF No. 24), Plaintiff has provided no evidence to show that Smith's Application for Statement of Charges was not justified by probable cause; nor

has Plaintiff provided any evidence to support her allegation that there was, in fact, no probable cause.[8]  *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) ("A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial'" (citing FED. R. CIV. P. 56(e)); *see also Nasim v. Tandy Corp.*, 726 F. Supp. 1021, 1026 (D. Md. 1989), *aff'd*, 902 F.2d 1566 (4th Cir. 1990) (explaining that "[t]he burden is on a plaintiff in a malicious prosecution suit to show lack of probable cause").

The record before the court shows that Judicial Officer Gregory Magers found that there was probable cause to charge Plaintiff.[9]  (Application and Statement of Charges, ECF No. 32-1 at 52-57.)  Plaintiff's charges consisted of aggravated animal cruelty in violation of MD. CODE ANN., CRIM. LAW § 10-606 and animal cruelty in violation of MD. CODE ANN., CRIM. LAW § 10-604. (Statement of Charges, ECF No. 32-1 at 57.)  In his affidavit, Smith states:

> Based upon my observations at the Property and Ms. Shenk's refusal to allow me to inspect her dogs, I applied for and received a search and seizure warrant from the Circuit Court of Maryland for Carroll County on February 14, 2017. The warrant gave me the authority to search the Property and to seize animals and related items and records. After the warrant was issued, Mr. Brown and I sought Ms. Shenk's cooperation in order to avoid them having to execute the warrant. Ms. Shenk refused to cooperate.

---

[8] The court notes that the fact that the charges were *nol prossed* "does not automatically provide evidence of lack of probable cause." *De Ventura v. Keith*, 169 F. Supp. 2d 390, 399 (D. Md. 2001).  "[T]he evidentiary effect of a *nolle prosequi* must depend upon the circumstances of its entry." *Exxon Corp. v. Kelly*, 281 Md. 689, 695 (1978).  In the instant case, the record before the court demonstrates that the reason for the *nol pros* was not related to a lack of probable cause.

The letter from State's Attorney DeLeonardo to Brown provides that the charges against Plaintiff were *nol prossed* because of difficulties related to Smith's involvement in the case, including his adversarial relationship with Plaintiff, his failure to follow policy requiring a co-affiant from the Sheriff's Office on the second warrant application, and statements Smith made to the press and social media following his application for statement of charges.  (Amended Complaint, ECF No. 24-1 at 1-5.)

[9] Md. Rule 4-211 provides, "a judicial officer may file a statement of charges in the District Court against a defendant ho has not been arrested for that offense upon written application containing an affidavit showing probable cause that the defendant committed the offense charged."

On February 20, 2017, Mr. Brown and I went to the Property and met with Ms. Shenk.  At that time, I observed three dogs in the yard and one dog in the outside kennel. While Mr. Brown and I were speaking with Ms. Brown, a fifth dog came outside. That dog was very thin and appeared to be emaciated. The dog was missing large areas of hair and was scratching itself to the extreme, causing scratch marks on the bare skin area. The dog's feet appeared to be red and raw, and appeared to have some open areas consistent with infected areas. The dog appeared to be in distress due to the scratching.

***

. . . Based on this information, as well as the perceived urgency and continued concern for the animals in Ms. Shenk's care, the search and seizure warrant was executed on February 21, 2017.

Upon entering the residence, the inside was found to be extremely cluttered and filthy, there was a strong odor of animal waste and a musty pungent odor inside. Ten dogs were found on the premises. Six were inside various cages and four dogs roaming the house. Based upon the clutter, there was barely any room to move. I located the dog with the skin condition and the dog was found to be a brownish female Sheppard type dog subsequently identified as "Suzie." I seized that dog.

There was another dog that was found to be in a very small carrier type cage. The dog appeared to be cramped in the carrier and the carrier was of inappropriate size to allow free movement of the dog. The dog was found to be a male tri-colored sheltie type dog subsequently identified as "Smiley." The dog was located under a cluttered kitchen/dining room table and was the only one in a cage that was of inappropriate size and the only one that had no bedding. There were numerous other larger metal cages in the residence, and it appeared that this dog was being treated differently than the others. I seized that dog as well.

While searching the residence, I also observed a white/tan female border collie mixed breed type dog having explosive diarrhea on the floor. I knew based on my training and experience that this is indicative of a health issue and could be dangerous considering the filthy unsanitary living conditions. I seized that dog, as well as a sample of the feces. The other dogs that were in kennels were in proper sized kennels and the inside of the kennels appeared to be newly cleaned. Based on the need for veterinarian care for the three dogs seized, and the late hour, the decision was made to leave the other animals and to have the ones taken examined.

15

Subsequent veterinarian exams revealed that the three dogs all tested positive for whip worm and the cases were severe. This type of worm requires specific medicine and is closely related to living in filthy unsanitary conditions. It is also easily spread through feces and the ingesting of feces. All three dogs were found to be severely malnourished and under-weight. The sheltie type dog was found to be crammed in the carrier and the dog was actually taller than the carrier and could not stand up or turn around. Standard proper vet care requires that all dogs on the premises to be treated for whip worm due to the conditions and the fact that the parasite is easily spread. This parasite can lead to weight loss, dehydration and death in this extreme case. Three independent veterinarians verified that this is standard practice and needed to be completed in this case. One of the vets consulted was Ms. Shenk's vet, Dr. Seibel. Dr. Seibel agreed to assist in getting Ms. Shenk to comply. Unfortunately, Ms. Shenk did not return Dr. Seibel's phone calls. Mr. Brown also attempted to contact Ms. Shenk regarding the follow-up and seeking proof of treatment.

After Ms. Shenk failed to take the necessary steps to secure the health and safety of the dogs that were still in her possession, I obtained a second Search and Seizure Warrant for the Property. That warrant was executed on March 3, 2017. Upon entering the residence, I observed four dogs in cages inside the residence, three roaming inside the residence, and one outside in the fenced kennel area. The cages hosing the four dogs were dirty and contained dirty towels, blankets, and bedding. All eight dogs were seized including the one outside.

The eight dogs that were seized were taken to a veterinarian. Six of the seven dogs seized from inside the house tested positive for whip worm. The dog found outside tested negative for whip worm, but tested positive for round worm. A poodle/terrier mixed type dog was found to have a skin condition known as a hot spot. One sheltie type dog was found to have a severe _ear infection and what the vet described as horrendous teeth. All the dogs required bathing and veterinarian care. The living conditions and overall health conditions were found to be substandard and indicated neglect/abuse in violation of the Maryland law. In the case of the sheltie in the small carrier, the violation appeared to be intentional in nature and indicated a torturous situation as the dog could not move. Significantly, at the time the dog was removed from the home, there were larger cages in the home that Ms. Shenk could have used for this dog, but did not. This dog also appeared to be more under weight than the others of this breed.

> Based upon my observations at the Property on multiple occasions,
> the visibly unhealthy condition of the dogs seized from Ms. Shenk,
> and the information provided by the veterinarians who treated the
> dogs after they were removed from Ms. Shenk's home, I filed an
> Application for Statement of Charges against Ms. Shenk. The
> application for statement of charges was reviewed by a
> commissioner who determined probable cause to arrest existed.

(Defs.' Mot., Edward Smith Decl., Exhibit 1, ECF No. 66-2 ¶¶ 15-16, 20-27.)  Smith set forth the

same information in his Application for Statement of Charges against Plaintiff.  (Application for

Statement of Charges, ECF No. 32-1 at 52-55.)   Importantly, an independent judicial officer

approved the application and issued the statement of charges.  *Id.*

Taking into account the totality of the circumstances, the undisputed facts show that Smith

had probable cause to the Application for Statement of Charges against Plaintiff.  *See Schloss v.*

*Lewis*, No. CV JFM-15-1938, 2016 WL 1451246, at *11 (D. Md. Apr. 12, 2016), *aff'd sub nom.*

*Schloss v. Abey*, 691 F. App'x 710 (4th Cir. 2017) (considering the totality of the circumstances,

including the information set forth in the application and an independent judicial officer approving

the application to find that there was probable cause to file an application for charges).  Indeed,

Plaintiff does not dispute any of the facts set forth in Smith's Application for Statement of Charges.

Plaintiff has failed to generate a dispute of material fact regarding Smith's probable cause

statement in his Application for Statement of Charges.  Because the court finds that Smith's

Application for Statement of Charges was supported by probable cause, Plaintiff's common law

and/or constitutional malicious prosecution claim fails, and Defendant Smith is entitled to

judgment on Plaintiff's malicious prosecution claim (Count 8).

### B.    Counts 1, 3, and 4—Illegal Search and Seizure

Counts 1, 3, and 4 are titled "Illegal Search and Seizure" against Defendant Smith.  (ECF

No. 24 at 9, 12, 14.)  The Fourth Amendment protects "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. AMEND. IV.

Plaintiff alleges that Smith made false statements and representations to Judge Hughes in his affidavit for the search warrants, and executed the warrants while she was not home.  (ECF No. 24 at 9, 12, 14.)  Defendants argue that Plaintiff is precluded from relitigating her Fourth Amendment search and seizure claims in this case because the issue was previously litigated and decided by Judge Hughes in Plaintiff's first replevin action.  (ECF No. 66-1 at 19.)

"Under *res judicata* principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002).  "The doctrine of *res judicata* encompasses two concepts: 1) claim preclusion and 2) issue preclusion, or collateral estoppel."  *Id.*  "In considering the preclusive effect of an earlier state court judgment on a new claim, we apply the 'preclusion law of the State in which judgment was rendered.'"  *Bennet v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019) (quoting *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000)).  Because the first replevin action was a judgment by a Maryland court, this court applies Maryland's principles of *res judicata*.

### 1. Claim Preclusion

"Under the doctrine of claim preclusion, a prior judgment bars the relitigation of claims that were raised or could have been raised in the prior litigation."  *Pittston Co. v. U.S.*, 199 F.3d 694, 704 (4th Cir. 1999).  Under Maryland law, claim preclusion requires three elements: "(1) the present parties are the same or in privity with the parties to the earlier dispute, (2) the claim

presented is identical to the one determined in the prior adjudication, and (3) there has been a final judgment on the merits." *Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 682 (D. Md. 2018).

"The first necessary element of *res judicata* is that the parties are the same or in a privity relationship with the parties to the earlier litigation." *Hall v. St. Mary's Seminary & Univ.*, 608 F. Supp. 2d 679, 684-85 (D. Md. 2009). "Whether the parties are the same or in privity with a party in the prior proceeding is a question of law." *Kim v. Council of Unit Owners for Collington Ctr. III Condo.*, 180 Md. App. 606, 617 (2008). "To be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'" *Martin v. Am. Bancorporation Retirement Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (quoting *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997)). The second element "of *res judicata* is that a final judgment on the merits issued in the earlier case." *Hall*, 608 F. Supp. 2d at 685. "The final element for *res judicata* is that 'the claim presented in the new litigation arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *Id.* at 685 (quoting *Laurel Sand*, 519 F.3d at 162 (internal quotation marks omitted)). "In Maryland, the standard for determining identity of claims is 'whether the same evidentiary facts would sustain both suits.'" *Id.* (quoting *Kutzik v. Young*, 730 F.2d 149 (4th Cir. 1984). "Two suits that rely upon the same facts will share an identity of claims even if the suits are based upon different legal theories." *Id.* at 686; *see Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 111 (2005) ("Once a set of facts has been litigated, *res judicata* generally prevents the application of a different legal theory to the same set of facts, assuming that the second theory of liability existed when the first action was litigated.") (internal quotations omitted). "Even if additional facts are pleaded in the later suit, the new claims

will be precluded if those facts and issues could have been presented in the earlier suit." *Hall*, 608 F. Supp. 2d at 686.

In the instant case, Plaintiff and HSCC were the parties to the first replevin action filed in March 2017 in the District Court for Carroll County, and the subsequent appeal to the Circuit Court for Carroll County. (District Court for Carroll County Docket Sheet, ECF No. 66-5; Circuit Court for Carroll County Docket Sheet, ECF No. 66-6.) In both actions, Plaintiff complains of the search and seizure warrants executed by Smith, an animal control officer for HSCC. Plaintiff is essentially bringing the same suit based upon the same conduct occurring in the scope of Smith's employment. Accordingly, the court is satisfied that the first element is met. *See deLeon v. Slear*, 328 Md. 569, 581 (1992) (holding that the nurses "by virtue of their employment relationship" with the hospital are in privity where "the plaintiff brought a defamation action against a hospital's nurses after he had lost a defamation suit against the hospital based upon the same allegedly defamatory statements"). The second element—final judgment on the merits— is satisfied because the circuit court entered judgment in favor of HSCC after a six-day trial. Lastly, Plaintiff's illegal search and seizure claim arises from the search and seizure warrants executed by Smith in February and March 2017. (ECF No. 24 at 9, 12, 14.) In the first replevin action, the circuit court concluded that the search and seizure warrant issued on February 14, 2017, was supported by probable cause and properly executed on February 21, 2017, and that the search and seizure warrant issued on March 3, 2017, was supported by probable cause and was properly executed on March 3, 2017. (Defs.' Mot., Circuit Court Memorandum Opinion, ECF No. 66-7 at 23.) Judge Hughes considered the same facts that are presented in the instant case. *Id.* Indeed, Judge Hughes considered the same search and seizure warrants that Plaintiff takes issue with in this case. *Id.* at 7-10.

Accordingly, Defendant Smith is entitled to summary judgment on Plaintiff's illegal search and seizure claim based on claim preclusion as a result of the circuit court's judgment in Plaintiff's first replevin action.  As discussed below, Defendant Smith is also entitled to summary judgment on Plaintiff's illegal search and seizure claim based on issue preclusion.

### 2. *Issue Preclusion*

Defendants additionally argue that Plaintiff's illegal search and seizure claim is barred by issue preclusion because Plaintiff seeks to relitigate the issue of whether Smith had probable cause to obtain the warrants, and whether those warrants were properly executed.  (ECF No. 66-1 at 21.)

"The doctrine of collateral estoppel or issue preclusion, [] is a subset of the *res judicata* genre."  *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322 (4th Cir. 2004) (internal quotation marks omitted).  "Applying collateral estoppel 'forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate.'"  *Id.* (quoting *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks and citation omitted)).  "To apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding."  *Id.*

The record before the court demonstrates that the issue of whether Smith had probable cause to obtain the warrants and whether Smith properly executed the two search warrants was

previously litigated, and resolved in the prior proceeding.  (Circuit Court Memorandum Opinion, ECF No. 66-7 at 7-10, 23.)  Further, in Plaintiff's first replevin action, the determination of whether the search and seizure warrants were supported by probable cause and properly executed was a critical and necessary part of the judgment given that the court assessed whether the initial seizure of the animals was at the time necessary to protect the animals from cruelty (or necessary for the health of the animals); and whether it was necessary for the defendants to retain the animals.  *Id.* at 2.  The circuit court reviewed Smith's two applications for a search and seizure warrant signed by Honorable Thomas F. Stansfield in February and March of 2017.  *Id.* at 7-10.  The circuit court then concluded: "[t]he search and seizure warrant issued on February 14, 2017 was supported by probable cause and was properly executed on February 21, 2017" and "[t]he search and seizure warrant issued on March 3, 2017 was supported by probable cause and was properly executed on March 3, 2017."  *Id.* at 23.  The disposition of the first replevin action is also a final judgment that the circuit court entered in favor of HSCC against Plaintiff after a six-day trial on the merits.  *Id.* at 24.  Lastly, in the previous proceeding, Plaintiff had a full opportunity to litigate whether she was subject to an illegal search and seizure—the circuit court conducted a six-day trial, Smith and Plaintiff testified, and Plaintiff submitted evidence and called witnesses.  *See generally* Circuit Court Memorandum Opinion, ECF No. 66-7 at 2-24.

Accordingly, Defendant Smith is entitled to summary judgment on Plaintiff's illegal search and seizure claim based on issue preclusion resulting from the circuit court's judgment in Plaintiff's first replevin action.

### C.     **Count 6—Illegal Entry/Trespass**

Count 6 is titled "Illegal Entry/Trespass" against Defendant Brown.  (ECF No. 24 at 15.) Plaintiff alleges that Brown is not a police officer and entered her home to assist Smith in removing

Plaintiff's dogs and other property.  *Id.*  Defendants argue that Brown is entitled to summary judgment on Plaintiff's trespass claim because the warrants executed were facially valid.  (ECF No 66-1 at 22.)

Trespass is "an intentional or negligent intrusion upon or to the possessory interest in property of another."  *Uthus v. Valley Mill Camp, Inc.*, 243 Md. App. 539, 555 (2019) (quoting *Royal Inv. Grp., LLC v. Wang*, 183 Md. App. 406, 444 (2008)).  "In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent."  *Id.* (quoting *Royal Inv. Grp., LLC*, 183 Md. App. at 444).  A trespass claim fails if the officers "were justified in relying on a facially valid warrant to enter [the] property."  *Ford v. Balt. City Sheriff's Office*, 149 Md. App. 107, 139 (2002) (concluding that the trespass claim fails because "[i]t is clear that the deputies were justified in relying on a facially valid warrant to enter the appellant's property").

Pursuant to MD. CODE ANN., CRIM. LAW § 10-615(b)(1) "[a]n officer or authorized agent of a humane society, or a police officer or other public official required to protect animals may seize an animal if necessary to protect the animal from cruelty."  Further, MD. CODE ANN., CRIM. LAW § 10-615(c), provides:

> (c)(1) If an animal is impounded, yarded, or confined without necessary food, water, or proper attention, is subject to cruelty, or is neglected, an officer or authorized agent of a humane society, a police officer, another public official required to protect animals, or any invited and accompanying veterinarian licensed in the State, may:
>> (i) enter the place where the animal is located and supply the animal with necessary food, water, and attention; or
>> (ii) seize the animal if seizure is necessary for the health of the animal.
> (2) A person who enters a place under paragraph (1) of this subsection is not liable because of the entry.

MD. CODE ANN., CRIM. LAW § 10-615 (b)(1), (c)(1).  Brown is the former Executive Director of HSCC and worked with Smith to investigate the matter at Plaintiff's property.  (Smith Decl. ¶ 1, 15-16.)

As discussed above, Smith applied for, and received, two search and seizure warrants in February and March 2017.  (Search and Seizure Warrants, ECF No. 32-1 at 28-32, 34-35, 38-41.) In support for the Application for Search and Seizure Warrant, Smith set forth a four-page probable cause statement.  (February 2017 Search and Seizure Warrant, ECF No. 32-1 at 28-32.)  The Application for Search and Seizure Warrant was signed and issued by Honorable Thomas F. Stansfield of the Circuit Court for Carroll County on February 14, 2017.  *Id.* at 28-33, 36-37.  The warrant allowed officers, with necessary and proper assistants, to search Plaintiff's residence, and search for evidence of animal cruelty/ neglect.  *Id.* at 36.  On March 3, 2017, after Plaintiff failed to take the necessary steps to secure the health and safety of the remaining dogs in her possession, Smith submitted a second Application for Search and Seizure Warrant, which was signed and issued by the Honorable Thomas F. Stansfield, of the Circuit Court for Carroll County.  (Search and Seizure Warrant, ECF No. 32-1 at 34-35, 38-41.)

Pursuant to the search and seizure warrants, Brown was justified in relying on the warrant to enter Plaintiff's property to search for evidence of animal cruelty/neglect. Moreover, Plaintiff provides neither evidence nor argument that Brown, as an executive director, may not provide assistance in the investigation and/or executing the warrant.  Indeed, MD. CODE ANN., CRIM. LAW § 10-615(b)(1) provides that an officer or authorized agent of the humane society may properly "seize an animal if necessary to protect the animal from cruelty."  Moreover, the Search and Seizure Warrants expressly permit law enforcement to be aided by "necessary and proper assistants" in execution of the warrants.  (Search and Seizure Warrant, ECF No. 32-1 at 28-35, 36-

41.)  Accordingly, Defendant Brown is entitled to judgment on Plaintiff's illegal entry/trespass claim.

## V.    CONCLUSION

For the reasons set forth herein, by separate order, Defendants' Motion for Summary Judgment (ECF No. 66) is GRANTED.

/S/

_____

Julie R. Rubin
United States District Judge

November 12, 2023